Randyl A. McCAULEY and Deanna R. McCauley, Appellants–Defendants,

v.

James S. HARRIS and Diane C. Harris, Appellees–Plaintiffs.

No. 28A04–0907–CV–421.

Court of Appeals of Indiana.

June 18, 2010.

Rehearing Denied Sept. 1, 2010.

---

Maggie L. Smith, Carl W. Butler, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellants.

Marilyn A. Hartman, Hartman & Paddock, P.C., Bloomfield, IN, Attorney for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Randyl A. McCauley and Deanna R. McCauley ("the McCauleys") appeal the trial court's judgment in favor of James S. Harris and Diane C. Harris ("the Harrises"). The trial court granted the Harrises' request for a permanent injunction against the McCauleys enjoining them from interfering with the Harrises' use and enjoyment of a thirty-foot-wide ingress and egress easement which runs over the McCauleys' property. The trial court also ordered the McCauleys to remove that portion of a pole barn which encroaches on the Harrises' easement and awarded damages to the Harrises for expenses incurred as a result of the McCauleys' interference with the Harrises' use of the easement. We affirm.

### Issue

The sole restated issue presented for our review is whether the trial court applied the correct legal standard when it concluded that the Harrises, as grantees of a specific and defined easement for ingress and egress, have the right to clear and pave the entirety of their thirty-foot-wide easement which also necessitates removal of a portion of the McCauleys' pole barn.

### Facts and Procedural History

The relevant facts indicate that on April 12, 2002, James Harris and Dale DuKate purchased a forty-acre tract of land in Greene County as tenants in common. The tract was divided into two 19.92–acre parcels (the "East tract" and the "West tract"), and Harris and DuKate decided that each of them would take one of those tracts. Because the only potential roadway access to the property was from the southeast corner, Harris and DuKate agreed that the receiver of the East tract would convey to the receiver of the West tract a thirty-foot-wide ingress-egress and utility easement along the southern border of the East Tract. Harris and DuKate had a survey conducted of the entire property, and the thirty-foot wide easement was staked and marked with physical markers. The written survey provided a legal description for the whole property and specifically delineated the boundaries of the easement with precise measurements from the physical markers. Harris and DuKate exchanged quitclaim deeds for the property, whereby DuKate conveyed his one-half interest in the West tract to Harris along with the thirty-foot-wide ingress and egress easement over the East tract. The survey was recorded as part of the deed.

At the time Harris and DuKate purchased the property, the wooded West tract property had no cleared access to any county road. Between June of 2002 and August 2005, the Harrises cleared some trees and brush from a portion of the easement to allow their initial access to the West tract. The Harrises put down gravel on approximately a twelve-foot-wide portion of the easement to facilitate access to their property.

In August of 2005, unbeknownst to the Harrises, DuKate conveyed a 3.58 acre tract of his property to the McCauleys. The tract included that portion of DuKate's land over which the Harrises had their easement. The conveyance to the McCauleys was made "[s]ubject to any and all easements, right of ways, reservations

of record," and the quitclaim deed provided a legal description of the property and a directive to "see attached Exhibit B." Volume 3, Exhibit II. Exhibit B consisted of a survey entitled "DESCRIPTION—30 foot Ingress–Egress and Utility Easement." *Id.* The attached survey contained a legal description of the Harrises' easement and was recorded with the quitclaim deed to the McCauleys. The survey clearly showed that the thirty-foot-wide easement ran along the southern edge of the conveyed property, and the survey contained the specific legal description of the easement boundaries. Similarly, at the time of the conveyance, visible markers were in place on the McCauleys' property delineating the easement boundaries. Despite their knowledge of the exact location and boundaries of the easement, the McCauleys constructed a pole barn on their property that encroaches onto the thirty-foot easement between one and one-half and two and one-half feet at different points. Although the McCauleys' home sits close to the easement boundaries, the home sits outside the thirty-foot-wide easement.

The Harrises did not visit their property for more than a year, and between the time the McCauleys purchased their property and October 2006, the Harrises and the McCauleys had no contact. In October of 2006, the Harrises hired an excavator to clear additional trees and brush off the easement in preparation for the Harrises' plan to construct a paved roadway over the entirety of the easement. However, when the excavator arrived to clear the easement, the McCauleys prevented the excavator from performing the work.

In addition, on several occasions, the McCauleys obstructed the Harrises' ingress and egress to their property by blocking the easement with parked cars.

On November 19, 2007, the Harrises filed their complaint for temporary and permanent injunction, declaratory judgment, and request for damages against the McCauleys.[1] By agreement of the parties, on January 16, 2008, the trial court issued a preliminary injunction enjoining all parties from obstructing the easement.[2] A bench trial was held on April 16, 2009. On June 11, 2009, the trial court entered its findings of fact, conclusions thereon, and judgment in favor of the Harrises. Specifically, the trial court found in relevant part that the Harrises have a clearly defined and identified thirty-foot-wide easement running along the southern edge of the McCauleys' property, that the McCauleys had actual and record notice of the existence and location of the Harrises' easement prior to the placement of any structures on the McCauleys' property, and that the Harrises have the right to use the full thirty-foot width of the ingress and egress easement, which includes the right to construct a roadway over all or any part of the thirty-foot easement. Accordingly, the trial court ordered as follows:

A. The Defendants, Randyl McCauley and Deanna McCauley are hereby permanently enjoined from directly or indirectly interfering with the [Harrises'] ingress and egress as well as any clearing or other work related to the construction of a roadway over all or any

---

1. Smithville Telephone Company, Inc., and Utilities District of Western Indiana Rural Electric Membership Corporation were listed as defendants in the original complaint, but they were dismissed as parties by court order on April 9, 2009.

2. Relations between the parties continued to deteriorate over the property dispute, and on January 10, 2009, Randyl McCauley was arrested for intimidation and pointing a firearm after a heated exchange with the Harrises.

part of their 30 foot ingress and egress easement.

B. The Defendants are ordered to remove that portion of the pole barn which encroaches on the easement within Sixty (60) days of the date of this Order.

C. The Court enters judgment in favor of the [Harrises] and against the [McCauleys] in the sum of $1,812.50, plus the costs of this action of $176.00. Each party shall be responsible for their own attorney fees.

D. The Court hereby finds in favor of the [McCauleys] and denies the [Harrises'] claim for punitive damages.

E. If [the Harrises] determine it is necessary to remove trees and/or soil in the process of developing the easement area, they shall first offer it to [the McCauleys], who shall have 30 days from the receipt of notice to remove the trees and/or soil from the easement area at [the McCauleys'] expense. If the trees and/or soil have not been removed by the [the McCauleys] not later than 30 days from the date of receipt of notice, then it shall be considered that [the McCauleys] have abandoned and disclaimed any right, claim or interest to the trees and/or soil to be removed.

Appellants' App. at 10. This appeal followed.

### Discussion and Decision

■ We begin by noting that the trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Our standard of review is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the

findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Johnson v. American Classic Mortg. Corp.* 894 N.E.2d 268, 270 (Ind.Ct.App.2008) (citation omitted). We also note that the Harrises bore the burden of proof at trial and prevailed. Therefore, the McCauleys are appealing from an adverse judgment. *See Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind.Ct.App.2002) (*opinion on reh'g*) (appeal from judgment based on findings in favor of party bearing burden of proof is appeal from an adverse judgment), *trans. denied.* When the trial court enters findings in favor of the party bearing the burden of proof, the findings are clearly erroneous if they are not supported by substantial evidence of probative value. *Romine v. Gagle*, 782 N.E.2d 369, 376 (Ind.Ct.App.2003), *trans. denied.* We will affirm a judgment where we find substantial supporting evidence, unless we are left with a definite and firm conviction that a mistake has been made. *See id.*

The McCauleys contend that the trial court erred when it concluded that the Harrises have the right to clear the entirety of their thirty-foot-wide easement, which also necessitates removal of a portion of the McCauleys' pole barn. Specifically, the McCauleys assert that the trial

court's judgment gives the Harrises more extensive rights to their easement than allowed by Indiana law for ingress and egress easements. We must disagree with the McCauleys.

It is well established that easements are limited to the purpose for which they are granted. *Drees Co., v. Thompson*, 868 N.E.2d 32, 38 (Ind.Ct.App.2007), *trans. denied.* The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. *Panhandle E. Pipe Line Co., v. Tishner*, 699 N.E.2d 731, 739 (Ind.Ct.App.1998). The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. *Id.* The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. *Id.* "All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference." *Id.* The servient owner "may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate." *Id.* Moreover, the owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. *Klotz v. Horn*, 558 N.E.2d 1096, 1100 (Ind.1990).

The McCauleys correctly assert that generally an easement for ingress and egress confers only the right to pass over the land rather than the more extensive right to partially control or alter the estate. *See Drees*, 868 N.E.2d at 38; *Metcalf v. Houk*, 644 N.E.2d 597, 600 (Ind.Ct.App.1994); *Hagemeier v. Ind. & Mich. Elec. Co.*, 457 N.E.2d 590, 594 (Ind. Ct.App.1983). The McCauleys make much of the fact that the easement at issue here is an ingress and egress easement and argue that the Harrises failed to meet their burden to prove that the McCauleys unreasonably interfered with the Harrises' exercise of their right to pass over the property. The McCauleys go so far to say that the Harrises are entitled to nothing more than a "passable means to access their property." Appellants' Br. at 11.[3] However, the McCauleys' argument misses the mark, as we must look to the express language of the instrument creating the easement itself to determine the intent of its creators.

When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof. *Drees*, 868 N.E.2d at 38. Neither party in the instant case contends that the grant of the easement is ambiguous, and we similarly find no such ambiguity. Therefore, we interpret the grant as a matter of law from the plain and ordinary meaning of the language of the grant. *Wendy's of Fort Wayne, Inc. v. Fagan*, 644

---

**3.** The record indicates, and we find it interesting, that the McCauleys themselves found it necessary to clear the entire thirty-foot width of an easement that lies east of their 3.58–acre tract and runs along the south border of the DuKate property. Accordingly, their ar-gument that "there is no circumstance in which a single lane, private road that serves one vehicle must be thirty-feet wide to be useable for ingress and egress" is disingenuous. Appellants' Br. at 16.

N.E.2d 159, 161 (Ind.Ct.App.1994). Particular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instrument as a whole. *Id.* Any doubt or uncertainty as to the construction of the language of the easement will ordinarily be construed in favor of the grantee. *Metcalf,* 644 N.E.2d at 601.

We are presented with a specific grant to the Harrises of a clearly defined easement thirty feet in width for the purpose of ingress and egress and utilities. The grant describes in great detail the length and width and the exact location of the easement, as well as noting the physical markers on the McCauleys' property defining the boundaries of the easement.[4] It is clear that the intent of the parties was to create an ingress and egress easement of a defined size in a specific location. Accordingly, the express terms of the conveyance of the easement are controlling, and any consideration as to what is merely a "necessary" use by the dominant estate for ingress and egress is unwarranted. Indeed, we find the following passage regarding ingress and egress easements instructive:

> If the grant or reservation is specific in its terms, it is decisive of the limits of the way. Thus, where the language of the instrument leaves no doubt as to its meaning, the court has no discretion to expand the terms of the way. On the other hand, where a conveyance of a right-of-way does not specifically define

it, the general rule as variously stated is that the grantee is entitled to, and only to, such a way as is reasonably necessary and convenient for the purposes for which it was created. In other words, a right-of-way easement created by a conveyance in general terms and without any restrictions on its use is to be construed as broad enough to permit any use that is reasonably connected with the reasonable use of the land to which it is appurtenant.

28A C.J.S. *Easements* § 198 (2008); *see Murat v. S. Bend Lodge No. 235 of Benev. & Protective Order of Elks of U.S.,* 893 N.E.2d 753, 756 (Ind.Ct.App.2008), *reaff'd on reh'g* (2009), *trans. denied.*

Because the grant of the easement here was decisive in its description of the ingress and egress path, the trial court had no discretion to expand it or to restrict its terms. The trial court was confined to give effect to the intention of the parties as evidenced by the language of the conveyance itself. Applying the correct standard of law, the trial court properly concluded that the Harrises' use and enjoyment of the easement for ingress and egress includes the right to use the easement in its entirety and to construct a roadway over all or any part of the easement. Such right is necessarily incident to their enjoyment of their specific and defined ingress and egress easement.

The evidence supports the trial court's finding that the McCauleys have continually interfered with the Harrises' enjoyment

---

4. The conveyance provides in relevant part:
   ALSO: An Ingress–Egress and Utility Easement being a part of the Southwest quarter of the Northwest quarter of Section 29, Township 8 North, Range 3 West, Greene County, Indiana, more particularly described as follows: Beginning at a marked ¾ inch iron pipe at the Southeast corner of said quarter quarter; thence North 89 degrees 48 minutes 54 seconds West along the South line of said quarter quarter 663.00 feet; thence North 00 degrees 08 minutes 59 seconds West 30.00 feet; thence South 89 degrees 48 minutes 54 seconds East 663.04 feet to the East line of said quarter quarter; thence South 00 degrees 03 minutes 51 seconds East along said East line, 30.00 feet to the point of beginning. Containing 0.46 acres, more or less.
   Volume 3, Exhibit VI.

of their easement by obstructing access as well as interfering with excavation attempts. Moreover, contrary to the McCauleys' assertion, their construction of a pole barn within the easement was a use of the property for a purpose inconsistent with the enjoyment of the easement by the Harrises, and in view of the fact that the Harrises intend to clear the easement in its entirety, the pole barn represents a material impairment of the easement.[5] The evidence indicates that the McCauleys had actual and record notice of the exact boundaries of the easement and nonetheless erected a permanent structure within the boundaries of the easement. The McCauleys erected that structure at their peril. The trial court did not err when it ordered the McCauleys to remove that portion of the pole barn that lies within the Harrises' easement.[6] We affirm the judgment of the trial court in all respects.

Affirmed.

BAKER, C.J., and DARDEN, J. concur.

---

**5.** The McCauleys cite our opinion in *Kanizer v. White Excavating, Inc.,* 444 N.E.2d 353 (Ind.Ct.App.1983), for the proposition that they have the right to maintain a structure which encroaches on the Harrises' easement. However, Kanizer is clearly distinguishable on its facts. In *Kanizer,* the servient estate owner maintained a gate at the intersection of an easement and a state road. We followed long-established law and held that a servient estate holder could maintain a gate across a right-of-way easement where that right-of-way terminates on his land, and he may require the dominant estate holder to open and close the gate at each passing. *Id.* at 354. We specifically noted in *Kanizer* that a gate across the right-of-way existed at the time the easement was first conveyed and further noted that the servient estate holder could not lock the gate or in any way interfere with the dominant owner's use of the right-of-way. Here, the McCauleys' pole barn did not exist at the time the easement was conveyed to the Harrises. More significantly, because the Harrises intend to clear the entire width of the easement in order to construct a roadway, the pole barn clearly interferes with the Harrises' use of their easement.

**6.** We recognize that the relationship between the McCauleys and the Harrises is quite contentious. However, we hope that these neighbors can learn to coexist peacefully. Accordingly, while the Harrises are legally within their rights to clear the entire thirty-foot width of their easement, we ask that the Harrises take some pause before doing so. We encourage the Harrises to be mindful of the great inconvenience and expense that removal of a permanent structure will impose upon the McCauleys to the extent that the Harrises may be willing to pave a lesser portion of the easement in certain locations so as to obviate the need for removal of the pole barn. In simple terms, just because one can legally do something does not necessarily mean one should.