# FOR PUBLICATION



**FILED**

Jan 11 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JEFFRY G. PRICE**
Peru, Indiana

ATTORNEY FOR APPELLEES:

**PATRICK J. ROBERTS**
Roberts Law Firm
Peru, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY J. REHL, SR. and BESSIE A. REHL, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 52A05-1105-PL-246 |
| | ) | |
| ROBERT V. BILLETZ and JOY A. BILLETZ, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable William C. Menges, Special Judge
Cause No. 52D01-0801-PL-38

**January 11, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Anthony and Bessie Rehl appeal the judgment of the trial court in favor of Robert and Joy Billetz regarding an access easement. The Rehls raise two issues, which we consolidate and restate as whether the court erred in entering judgment for the Billetzes. We affirm.

The facts most favorable to the judgment follow. Prior to 1991, Clyde and Margorie Allmon owned a tract of land in Miami County, Indiana, and operated a campground on a northern portion of the property. Pursuant to an installment contract, the Allmons executed a warranty deed on June 28, 1991, conveying to the Billetzes a portion of their land which included the property upon which the campground was located (the "Billetz Property"), and the Allmons retained a two-acre portion of the land abutting County Road 200 North (the retained parcel hereinafter referred to as the "Rehl Property"). In order to provide access to the Billetz Property from County Road 200 N., the Allmons also granted an easement (the "Easement") for ingress and egress to the Billetz Property over the Rehl Property. The language of the Easement, which was described in the legal description attached to the deed, in terms of a carve-out to the Rehl Property retained by the Allmons, provides:

> Subject to an easement 30 feet in width off of the entire west side of said 2.00 acre tract. Said easement is for ingress and egress to lands to the north of said 2.00 acre tract, commonly known as R.R. #6, Box 583, Peru, Indiana.

Appellants' Appendix at 51.

In March 1997, the Rehls entered into a lease with an option to purchase in connection with the Rehl Property with the estate of Marjorie Allmon (the "Marjorie Estate").

2

In August 1998, the Marjorie Estate and the Billetzes entered into a release agreement to settle matters regarding the installment contract related to the Billetz Property. The release agreement recited the language of the Easement. In connection with the release agreement, the personal representative of the Marjorie Estate executed a personal representative's deed on September 15, 1998.

In February 1999, the Rehls purchased the Rehl Property from the Marjorie Estate. The June 28, 1991 warranty deed and the September 15, 1998 personal representative's deed, both of which contained the language setting forth the Easement, were recorded in the Miami County recorder's office on April 9, 1999.

On January 22, 2008, the Rehls filed a complaint against the Billetzes alleging that "the ongoing operation of [the Billetzes's] campground business has increased, or added to, the burden upon their real estate imposed by the original easement granted in favor of [the Billetzes]" and that the "burden is now unreasonable." Id. at 14. The Rehls also stated that they "verily believe [the Billetzes] have access from their real estate to the county road directly south of [the Rehl Property], and therefore the easement in question is not a way of necessity." Id. The Rehls requested "an order determining the original easement granted for the benefit of [the Billetzes] and their real estate to be forfeited" and "for an injunction terminating the [Billetzes] further use of the easement . . . ." Id.

A bench trial was held on November 30, 2010, at which the Rehls requested findings and conclusions pursuant to Ind. Trial Rule 52 and the parties presented evidence and testimony regarding the grant of the Easement and the traffic upon and use

of the Easement.[1]  On May 10, 2011, the court entered a judgment for the Billetzes and against the Rehls which provided in part:

**FINDINGS OF FACT:**

1.    The parties own adjacent real estate located in Miami County, Indiana.

2.    The common predecessor in title to the parties were Clyde and Margorie Allmon, who owned the combined tract.

3.    The Allmons operated a campground on the property currently owned by the [Billetzes], and maintained their residence on the property currently owned by the [Rehls].

4.    In 1991, the Allmons sold the campground business and real estate to the [Billetzes].  In addition to the fee simple title conveyed to the [Rehls], the Allmons also conveyed an easement for ingress and egress over [] thirty (30) foot in width over the property they retained.

5.    Some years later, the Allmons sold the real estate, subject to the easement to the [Rehls].

6.    There has been significant previous litigation between the parties concerning the easement, and the [Rehls] have brought the instant suit seeking to extinguish the easement.

7.    While the number of vehicles using the easement may have increased modestly since the original granting of the easement, that increase, if any, does not create a greater burden on the servient estate than was originally anticipated, agreed upon, and created by the Allmons, and is the actual use originally anticipated and agreed upon when the easement was created.

8.    Other than traffic using the easement for its intended purpose, the use of the easement by the dominant estate does not interfere with the [Rehls'] use of the servient estate.

---

[1] According to testimony at trial, there were previous legal proceedings between the parties related to the Easement and there were disputes regarding the dust from the Easement area, the paving of the Easement area, and the parties' respective shares of the costs for paving.

9. Any Conclusion of Law which would be more properly denominated a Finding of Fact is hereby incorporated herein as such.

**CONCLUSIONS OF LAW:**

1. An appurtenant easement acquired by actual grant cannot be lost by non-use of the right by the dominant owner. *Consolidation Coal Co. V. Mutchman*, 565 N.E.2d 1074 (Ind.App.1990), *trans. denied*.; *Salvia v. Reitmeyer*, 156 Ind.App. 203, 295 N.E.2d 869 (1973).

2. The axiom that the law does not favor forfeitures applies to easements. *Schwartz v. Castleton Christian Church, Inc*., 594 N.E.2d 473, 477 (Ind.App. 1992)[, trans. denied].

3. In *Panhandle E. Pipeline Co. v. Tishner*, 699 N.E.2d 731, 739 (Ind.App. 1998), it was held:

> The owner of an easement (the dominant estate) possesses all rights necessarily incident to the enjoyment of the easement. *Litzelswope v. Mitchell*, 451 N.E.2d 366, 369 (Ind.App. 1983). He may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. *Id*. The owner of the servient estate may use his property in any manner and for any purpose consistent with the ennjoyment [sic] of the easement and the dominant estate cannot interfere with the use. *Holding v. Indiana & Michigan Elec. Co*., 400 N.E.2d 1154, 1157 (Ind.App. 1980). All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. *Id*. The owner of the servient estate may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. *Id*.

4. A right of way over land is an interest in the servient estate, regardless of whether it was acquired by adverse use, or by express or implied grant. It cannot be extinguished except in a mode recognized by law. *Thomas v. McCoy*, 48 Ind.App. 403, 405, 96 N.E. 14, 15 (1911).

5

5.     An easement for ingress and egress is not extinguished by the fact that the dominant owner has or acquires other land by which the dominant estate can connect to a public highway. *Brock v. B&M Monster Farms, Inc.*, 481 N.E.2d 1106 (Ind.App. 1985).

6.     "The servient estate [may only be] burdened to the extent to accomplish the end for which the dominant estate was created (Citations omitted)." *Brock, supra,* at 1109.

7.     There exists no other legal reason to support extinguishing the easement.

8.     Any Finding of Fact which would be more properly denominated a Conclusion of Law is hereby incorporated herein as such.

    IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED, by the Court that judgment should be, and it hereby is, entered in favor of the [Billetzes]. Costs to the [Rehls].

Id. at 9-12.

The issue is whether the trial court erred in entering judgment for the Billetzes. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. In our review, we first consider whether the evidence supports the factual findings. Id. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the

6

evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions. Kwolek v. Swickard, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (citing McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), reh'g denied, trans. denied), trans. denied.

The Rehls argue that "[a]s a general proposition, easements are limited to the purpose for which they are granted" and that "the owner of the dominant estate cannot subject the servient estate to extra burdens." Appellants' Brief at 8. The Rehls argue that the Easement was "given for the sole purpose of allowing the grantees ingress and egress to the 'lands to the north of the two acre tract'" and that "[s]pecifically, the [Easement] does not mention business invitees, customers or other persons who might be visiting the grantee's land in order to use the RV park." Id. The Rehls further argue that "the phrase 'non exclusive' does not appear in the easement instrument in question" and that therefore "one must conclude that the only persons granted the right of ingress and egress were the grantees, namely: Mr. and Mrs. Billetz" and that the Easement does not provide for ingress and egress for "any persons using the RV park nor anyone other than the grantees" such as "the grantees' servants, agents or employees." Id. at 8-9. The Rehls also argue that "[m]oreover, the increased traffic on the easement, caused by increased use of the RV park, was not within the contemplation of the easement document and constitutes an unreasonable burden on the servient estate owner, which exceeds the scope of the original easement." Id. at 10. The Rehls argue that the court erred in making

findings under Paragraphs 7 and 8 of its findings of fact, asserting that there is no evidence to support the inference drawn by the court and there was nothing in the easement language to suggest that other persons were to be benefitted by the Easement. The Rehls further argue that the court erred in finding that the number of vehicles using the Easement may have increased modestly since the grant of the Easement and points to the evidence they presented regarding the increased traffic over the Easement area, including evidence of the number of vehicles and the size of the vehicles.

The Billetzes argue that "[t]he traffic count and unscientific, unverified method used by Rehl . . . is not credible evidence sufficient to sustain the modification or forfeiture of the easement" and that "[t]he weight and sufficiency of the evidence are left to the sound discretion of the trial court . . . ." Appellees' Brief at 8-9. The Billetzes argue that it can be inferred from the circumstances of the sale of the campground that "the 30 foot drive was intended to be and was always used by the patrons, owners, maintenance, repair, construction workers and employees necessary to operate the campground as a going concern" and that "[i]t is against all logic to assume that the easement use was limited to solely the grantees Billetz and not its patrons and invitees." Id. at 10. Further, the Billetzes argue that the Rehls' evidence regarding the traffic on the easement area does not prove the Rehls' "unreasonable burdensome claim" because the Rehls' evidence selected fourteen non-consecutive days in August of 2006, which did not include any weekends, and selected eight days in September 2009, which included the campground's busiest time, the Labor Day weekend, on its busiest year. Id. at 11. The Billetzes essentially argue that the court's findings in Paragraphs 7 and 8 were supported

by the evidence and that the court was not required to reach a different result based upon the Rehls' evidence of increased use.

In their reply brief, the Rehls argue that the court is not free to rewrite the Easement to serve the intended purposes of one of the parties, that the court's conclusions fail to adequately address the issues presented and to disclose the theory upon which the court decided the case, that the court's construction of the Easement is unreasonable and represents an unfair burden upon them, that they presented evidence that established a substantial increase in the traffic over the Easement, that they proposed a construction of the Easement that would avoid forfeiture of the Easement, and that there was evidence of increased maintenance of the Easement area.

It is well established that easements are limited to the purpose for which they are granted. Kwolek, 944 N.E.2d at 571 (citing McCauley, 928 N.E.2d at 314). The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. Id. The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. Id. All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. Id. The servient owner may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. Id. Moreover, the owner of the dominant estate cannot subject the servient estate to extra burdens, any more

than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. Id.

Generally, an easement for ingress and egress confers only the right to pass over the land rather than the more extensive right to partially control or alter the estate. Id. However, we must look to the express language of the instrument creating the easement itself to determine the intent of its creators. Id.

> When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof. *[W]e interpret the grant as a matter of law from the plain and ordinary meaning of the language of the grant*. Particular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instrument as a whole. Any doubt or uncertainty as to the construction of the language of the easement will ordinarily be construed in favor of the grantee.

Id. (citing McCauley, 928 N.E.2d at 314-315 (emphasis added; citations omitted)).

At trial, the evidence included the 1991 warranty deed, and the 1998 personal representative's deed, and the release agreement between the Marjorie Estate and the Billetzes. In addition, the Rehls presented a traffic log of use of the Easement, which included a number of observations in August 2006 and September 2009, DVDs containing recorded images of traffic over the Easement area, photographs of the Easement area and a portion of the Billetz Property, a request for admissions, a July 2009 newspaper article related to local campgrounds, a letter from Robert Billetz to the Rehls in July 2006 related to the existence of a fence at the time, a print-out of the campground's website, a January 2005 court order under another cause number finding the Billetzes in indirect contempt for failing to pay a surveyor fee, ordering them to pay

10

surveyor and attorney fees, and ordering the unpaved area of the Easement area to be paved, a June 2005 petition filed by the Rehls for an order with respect to paving of the Easement area, and a May 2006 order regarding the parties' duties related to the maintenance of the Easement area.

In addition, John Rehl and Robert Billetz testified at trial. John Rehl testified that he and his wife purchased the Rehl Property subject to the Easement and that the Billetzes operated a campground business on the Billetz Property since the time he and his wife purchased the Rehl Property. On cross-examination, John indicated that he resided at the Rehl Property since 1997, and when asked "and for two years you saw the traffic coming and going," testified "Yes, I saw the, what little traffic there was." Transcript at 36. When asked whether the Easement was the "only improved access since 1991 and before to the campground," John stated "[t]he key word being improved, yes." Id. at 38. John testified regarding his observation of the traffic pattern and use of the Easement and the recordings he had made to document the traffic and use. John also testified that the Billetzes would not be landlocked if the Easement were extinguished as the Billetzes could build a road on their other property which abuts County Road 200 North.

Robert Billetz testified that he and his wife purchased the Billetz Property in 1991, that they had operated the campground business continuously since that time, that Clyde Allmon had previously operated the campground business and that the current business is "essentially [] the same kind of operation that [the Allmons] had." Id. at 56. Robert testified that he also purchased a franchise from the Allmons related to the campground

11

business which required an entrance and exit, and that the initial campground season starts in April and "tapers down" in October. Id. at 62. Robert testified that the campground business was down in 2010 compared to 2009, that the campgrounds are normally full for Labor Day weekend, but not in 2010, and that the campgrounds "were not full the Fourth of July so []traffic was considerably less." Id. Robert also testified that after he purchased the Billetz Property there was a failed septic system, that he installed "a water reclamation system and then [] added a wetlands portion to that for all our sewage," that it "was a State requirement for us to proceed to do something in lieu of having a failed septic system on the property," and that nothing can "[i]n reality" be built on the area east of the Rehl Property, where the Rehls suggest they build a road, as it is "used for an irrigation area . . . ." Id. at 58-59.

The language which describes the Easement provides: "Subject to an easement 30 feet in width off of the entire west side of said 2.00 acre tract. Said easement is for ingress and egress to lands to the north of said 2.00 acre tract, commonly known as R.R. #6, Box 583, Peru, Indiana." Appellants' Appendix at 51. Although the grantees named on the 1991 warranty deed (and the 1998 personal representative's deed) were the Billetzes, we observe that the language creating the Easement does not expressly provide that the Easement benefits the Billetzes as the grantees only. Moreover, the language expressly provides that the Easement "is for ingress and egress to lands to the north of said 2 acre tract." Id. The implication of this language is that the parties, and the Allmons as the grantors, intended for the Easement to benefit or provide access to the Billetz Property and the campground. This interpretation is consistent with the use of the

Billetz Property as a campground at the time the Easement was granted. See McCauley, 928 N.E.2d at 315 (examining a grant of easement and finding that the trial court's conclusions as to the right to use the easement area, giving effect to the intention of the parties as evidenced by the language of the conveyance itself, were proper).

Furthermore, with respect to the trial court's findings related to the use of the Easement, we note that the parties presented evidence and testimony of the use and changes in the use and traffic upon the Easement area. Based upon the evidence presented at trial, and noting that we do not reweigh the evidence and consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment, we cannot say that the court erred in making its findings under Paragraphs 7 and 8 of its findings of fact related to the relative use or increased use of the Easement area and interference with the use of the Rehl Property. See id. at 315-316 (concluding that evidence supported the trial court's findings related to an easement).

For the foregoing reasons, we affirm the trial court's judgment in favor of the Billetzes and against the Rehls.

Affirmed.

MAY, J., and CRONE, J., concur.

13