

FILED

Mar 16 2017, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott B. Cockrum
Hinshaw & Culbertson LLP
Schereville, Indiana

ATTORNEYS FOR APPELLEE

Lloyd P. Mullen
Mullen & Associates PC
Crown Point, Indiana

Joseph Stalmack
Joseph Stalmack & Associates, P.C.
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Admiral Insurance Company,<br>*Appellant-Defendant,*<br><br>v.<br><br>Joseph Banasiak, as Personal Representative of the Estate of Habib Tagizadieh a/k/a Habib Zadeh, deceased and Jennifer Muehlman,<br>*Appellees-Plaintiffs.* | March 16, 2017<br><br>Court of Appeals Case No.<br>45A05-1604-PL-859<br><br>Appeal from the Lake County Superior Court<br><br>The Honorable Bruce D. Parent, Judge<br><br>Trial Court Cause No.<br>45D04-1404-PL-50 |

**Brown, Judge.**

[1] Admiral Insurance Company ("Admiral") appeals the trial court's denial of its motion for summary judgment and its grant of declaratory judgment. Admiral raises one issue which we revise and restate as whether the trial court erred in denying its motion for summary judgment or in entering declaratory judgment in favor of the Estate of Dr. Habib Zadeh.[1] We reverse.[2]

## Facts and Procedural History

[2] Admiral issued a professional liability policy (the "Policy") to Dr. Habib T. Zadeh, with an initial policy period from September 21, 2008, to September 21, 2009, and with a "Retroactive Date" of September 21, 2005. Appellant's Appendix at 58, 62. The Policy provides:

### PHYSICIANS, SURGEONS AND DENTISTS PROFESSIONAL LIABILITY INSURANCE

### Claims-Made

THIS IS A CLAIMS-MADE POLICY. COVERAGE AFFORDED BY THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE "CLAIMS" THAT ARE FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US DURING THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD. PLEASE REVIEW THIS POLICY

---

[1] At some points in the briefs and record, Dr. Zadeh's last name is spelled Zedeh.

[2] On February 15, 2017, we held oral argument in Indianapolis. We thank counsel for their well-prepared advocacy.

CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

\* \* \* \* \*

I.      INSURING AGREEMENT

We will pay on behalf of the "insured" those amounts in excess of the Deductible stated in the Declarations, if applicable, which you are legally obligated to pay as "damages" for a "claim" first made against you during the "policy period" and reported to us in writing during the "policy period", or an Extended Reporting Period, provided that the following additional conditions are met:

\* \* \* \* \*

D.  we receive notice of a "claim" within sixty (60) days after the expiration or termination date of this policy in accordance with:

> 1.  Section VII. "INSURED'S" DUTIES IN THE EVENT OF A "CLAIM"

> 2.  Section V.  EXTENDED REPORTING PERIOD.

\* \* \* \* \*

VII.  "INSURED'S" DUTIES IN THE EVENT OF A "CLAIM"

Each "insured" must comply with the following conditions:

A. If a "claim to which this policy applies is made against you, then you must give written notice, as soon as practicable, and as otherwise required by this policy to us.

B. With regard to Item 11. DEFINITIONS, b. 1, 2 and 3, when a "claim" is reported in writing to us, the notice must contain reasonably obtainable information regarding the alleged act, error or omission including, but not limited to names of the potential witnesses, name of the alleged claimant(s), and the extent and type of "claim" anticipated.

C. You must cooperate with us in the defense and investigation of any "claim". We may require that you submit to examination under oath, if required, produce and make available all records, documents and other materials which we deem relevant to the "claim".

   1. You must also, at our request, attend hearings, depositions and trials.

   2. In the course of investigation or defense, provide us with written statements as requested by us or your attendance at meetings with us.

   3. You must assist us in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses, all without charge to us.

* * * * *

VIII. OTHER CONDITIONS

* * * * *

J. Action Against Us

No action shall be brought against us by you to recover for any loss or "damages" under this policy unless, as a condition precedent thereto:

1.  you have fully complied with all the terms and conditions of this policy; and

2.  the amount of such loss or "damages" has been fixed or rendered certain:

    a. by a final judgment against you after trial of the issues; or

    b. the time to appeal such judgment has expired without an appeal being taken; or

    c. if appeal is taken, after the appeal has been determined; or

    d. the "claim" is settled in accordance with the terms and conditions of this policy.

In no event shall any action brought by anyone be maintained against us unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

* * * * *

*Id.* at 64-70.

[3]     On July 15, 2009, Dr. Zadeh elected to cancel coverage under the Policy. A cancellation endorsement states: "In consideration of a return premium of $12,875.00, it is hereby agreed that this insurance is cancelled effective 07/15/2009." *Id.* at 86. That same day, Dr. Zadeh elected to purchase an Extended Claim Reporting Period which provided that the extended period was from July 15, 2009, to July 15, 2010.

[4]     Meanwhile, on October 6, 2008, Jennifer Muehlman filed a complaint against "John Doe, M.D." in the Lake County Superior Court in cause number 45C01-0810-CT-154 ("Cause No. 154") alleging that she sustained an injury to her leg while jogging on October 8, 2006, that she sought treatment from the defendant for her injury, and that the defendant diagnosed her with a fracture and performed surgery on October 9, 2006. *Id.* at 92. She alleged she sustained severe and permanent injuries that were proximately caused by the defendant's negligence. An entry in the chronological case summary for Cause No. 154 states "Service: Summons and Complaint" and "Doe M.D., John[,] Habib T. Zadeh, M.D." *Id.* at 96. In a letter dated October 15, 2008, the Indiana Patients' Compensation Fund wrote to Dr. Zadeh stating:

> Please find enclosed a copy of a complaint filed by Jennifer Muehlman, pursuant to I.C. 34-18-1-1, et seq., effective July 1, 1975.
>
> We acknowledge the filing of this complaint with this department pursuant to the above-referenced law. Please note that our records indicated that your proof of financial responsibility, filed by your Insurer has lapsed. Your Insurer has 90 days from the

actual date of expiration in which to file your renewal. Your
Insurer must notify us upon timely renewal, so that we may
confirm coverage for this claim. If we do not receive such notice,
there may not be qualification pursuant to I.C. 34-18-1-1 et seq.

* * * * *

Confirmation of this notice by the department and the advice as
contained herein is, by copy of this letter, communicated to
Jennifer Muehlman.

*Id.* at 126.

[5]     In September 2010, Muehlman filed a motion for entry of default judgment

against Dr. Zadeh, and the court granted default judgment in October 2010. In

April 2011, Muehlman filed a motion to set a hearing for damages, and a

hearing was scheduled for September 12, 2011. In September 2011, Attorney

Joseph Banasiak filed a motion to continue and a letter indicating that he

represented Dr. Zadeh. The court continued the hearing.

[6]     In a letter dated October 25, 2011, Banasiak informed Admiral that Muehlman

was making a medical malpractice claim against Dr. Zadeh. Specifically, the

letter states:

Please be advised that this office represents Dr. Habib T. Zadeh
regarding the claim brought by Jennifer Muehlman. I was
provided your name by Attorney Terrence J. Madden. I am
enclosing a copy of the letter sent to Mr. Madden on September
1, 2011. As you can see, my client maintains that he discussed
this matter with Mr. Madden during another menial matter. For
whatever reason, neither Mr. Madden or his firm appeared and

neither did anyone else from Admiral. As a result, a Default Judgment was taken against Dr. Zadeh in said matter. The matter had been set for damages and I was able to continue the matter generally. I have further discussed this matter with opposing counsel and I may have some options to set aside the legal default in this matter thereby removing any prejudice. Please contact me to discuss this matter further. At this time, I have taken no other action other than continuing the prove up and damages hearing. I have done no other discovery so as to avoid prejudicing the carrier.

*Id.* at 88.

[7] In a letter dated November 3, 2011, Scott Mansfield, the Claims Superintendent for Admiral, wrote to Banasiak advising him that Admiral was denying the claim. Mansfield wrote that it appeared that Muehlman's claim was first made against Dr. Zadeh on or about October 15, 2008, when he received notification of the complaint from the Indiana Department of Insurance ("DOI"), that the claim was never reported to Admiral at any time prior to the cancellation of the Policy which took effect on July 15, 2009, that the requirements of the Policy had not been met, and that Admiral reserved its right to contest coverage on the grounds that it had been prejudiced by the default judgment entered against Dr. Zadeh prior to Admiral being notified of the matter.

[8] In a letter dated November 5, 2013, Attorney Joseph Stalmack wrote Mansfield and informed him that he was representing Dr. Zadeh's interests along with Banasiak. Stalmack cited Ind. Code § 34-18-13-4 and asserted that the Policy was still in effect pursuant to the statute because no notice of cancellation had

been received by the insurance commissioner. Stalmack wrote that an affidavit from Nancy Wilkins at the DOI indicated that the DOI had no record of having received written notice pursuant to Ind. Code § 34-18-13-4. He also asserted that the affidavit of Nancy Wilkins "states that it is the practice of the DOI to forward copies of all letters sent to a qualified healthcare provider to the healthcare provider's insurance carrier. Therefore, it may be presumed that the attached letter of October 15, 2008 was also sent to Admiral." *Id.* at 124.

[9] On April 21, 2014, Banasiak, as personal representative of the Estate of Habib Tagizadieh a/k/a Habib Zadeh, filed a complaint for declaratory judgment in the "Lake Circuit / Superior Court" in cause number 45D04-1404-PL-50 ("Cause No. 50"), which listed Muehlman as a defendant and requested that the court interpret the applicable statutes and Policy and declare that Admiral was required to defend and indemnify Dr. Zadeh against the claims asserted by Muehlman. *Id.* at 14-17. The Estate alleged that Dr. Zadeh died on or about August 12, 2012, and that Admiral was obligated to provide coverage due to the timely notice of the claim and Admiral's failure to provide the required notices pursuant to Ind. Code § 34-18-3-4.

[10] On May 30, 2014, Admiral filed a Notice of Removal in the United States District Court for the Northern District of Indiana. On June 13, 2014, Admiral filed an answer to the complaint and affirmative defenses in the District Court.

[11] On May 20, 2015, Admiral filed a motion for summary judgment in the District Court. On June 17, 2015, the Estate filed a response in opposition to summary

judgment. The Estate asserted that genuine disputes included: (1) whether the Estate's declaratory judgment action was timely filed; (2) whether Admiral received timely notice of Muehlman's claim; (3) whether Admiral had been prejudiced by the lack of notice of Muehlman's medical malpractice claim against Dr. Zadeh; and (4) whether Admiral was estopped from denying coverage for Muehlman's claim due to its failure to comply with Ind. Code § 34-18-13-4.

[12] On July 15, 2015, Admiral filed a reply to Banasiak's response and a week later filed a motion to strike portions of evidence cited by Banasiak. On November 10, 2015, the District Court remanded the case to the Lake County Superior Court for all further proceedings.

[13] On March 16, 2016, the Lake County Superior Court held a hearing at which the Estate's counsel argued:

> What happened here is three things that should have happened, didn't happen. Dr. Zadeh should have sent the lawsuit to the company. There's no evidence that he did. The Department of Insurance should have sent the lawsuit to Admiral Insurance, as they do in all cases. There's no evidence that they did that. And Admiral Insurance should have sent the notice of cancellation to the Department of Insurance. They didn't do that.

Transcript at 24. He also argued: "What I'm talking about here is - - I'm actually arguing Ms. Muehlman's case, is what I'm saying. What I'm saying is, as to her, this policy is in effect." *Id.* He later stated: "Sure, I guess it benefits us by having it effective as to Ms. Muehlman but that's the crux of the matter.

The matter is you can't take that away from her because they failed to do something." *Id.* at 25.

[14] On March 21, 2016, the court entered an order denying Admiral's motion for summary judgment and granting declaratory judgment which states in part:

> At the hearing, both parties indicated that the Court's decision related to summary judgment would effectively determine the issues alleged in the underlying declaratory judgment. The Court took this to mean that a granting of ADMIRAL'S summary judgment would be a finding that no insurance coverage existed and a denial of summary judgment would mean that the ESTATE would be granted its prayer for declaratory relief i.e., insurance coverage. As a consequence, the Court entered its Order in conformity with Trial Rule 52. . . . The Court Ordered:
>
> \* \* \* \* \*
>
> **MOTION TO STRIKE**
>
> ADMIRAL moved to strike paragraphs four and five[3] of an affidavit of Nancy Wilkins dated October 28, 2013, which had been designated by the ESTATE. That affidavit stated, *in pertinent part*:
>
>> Paragraph 2. I am employed by the Indiana Department of Insurance in the Medical Malpractice Division. In the course and scope of my employment, I routinely review records and correspondence created and maintained in the

---

[3] The trial court noted: "Paragraph 5 of the affidavit in question was accidently misnumbered as '6' in the written affidavit." Appellant's Appendix at 9.

regular course of business by the Indiana Department of Insurance.

Paragraph 4. It is the practice of the Indiana Department of Insurance to forward a copy of all letters sent to a qualified healthcare provider to the healthcare provider's insurance carrier.

Paragraph 5. The Indiana Department of Insurance has no record of having received written notice pursuant to Indiana Code 34-18-18-4 that the medical malpractice insurance policy issued by Admiral Insurance Company, policy number EO0000007525-01, to Habib Zadeh was canceled at Habib Zadeh's request effective July 15, 2009.

Relative to paragraph 4, ADMIRAL argued first that Nancy Wilkins did not become employed by the Indiana Department of Insurance (hereinafter "DOI") Medical Malpractice Division until January 12, 2011, and that the facts at issue had occurred in October of 2008. It was argued – and Ms. Wilkins agreed – that she did not possess personal knowledge of the policies and procedures practiced by that department in 2008. Second, ADMIRAL argued that the definition of a "qualified healthcare provider" expressed a legal opinion that Ms. Wilkins was not qualified to give.

Relative to paragraph 5, ADMIRAL'S argument was that Ms. Wilkins' shortcomings related to paragraph 4 meant that the information declared by her in paragraph 5 was unreliable.

The Court agreed with ADMIRAL that, based upon Ms. Wilkins' subsequent affidavit of July 14, 2015, she did not have knowledge sufficient to detail the practices of the DOI in 2008. The Court disagreed, however, with ADMIRAL'S position that a person employed by the DOI in the Medical Malpractice

Division that routinely reviews records and correspondence of that department kept in the regular course of business, within the scope of her employment, cannot define who is and who is not a qualified healthcare provider. Such a determination is not a matter of her expressing her opinion, but more a product of her checking a list kept in the department in the ordinary course of its business; a given person is either on that list and is a qualified healthcare provider, or is not on that list and is thus not a qualified healthcare provider. Finally, the Court disagreed with ADMIRAL'S position that Ms. Wilkins could not swear as to the facts provided in paragraph 5 of her affidavit; here too, the facts provided were simply taken from the records of the DOI – something for which is qualified, and has been trained.

Consequently, related to ADMIRAL'S motion to strike, the Court Ordered:

1. The motion to strike that portion of paragraph 4 of Nancy Wilkins' affidavit of October 28, 2013 related to the practices the [sic] Indiana DOI in 2008 was **GRANTED**.

2. The motion to strike the portion of paragraph 4 of Nancy Wilkins' affidavit of October 28, 2013 related to Dr. Zadeh being a "qualified healthcare provider" was **DENIED**.

3. The motion to strike paragraph 5 of Nancy Wilkins' affidavit of October 28, 2013 was **DENIED**.

\* \* \* \* \*

**CONCLUSIONS OF LAW**

1. The ESTATE established – and ADMIRAL did not contest – that the DOI had no record of having received a written

cancellation of notice related to Dr. Zadeh's professional liability insurance policy.

2. ADMIRAL established a *prima facie* showing in favor of granting its summary judgment, moving the burden onto the ESTATE to establish some issue of material fact, sufficient to defeat summary judgment.

3. The ESTATE carried its burden, defeating summary judgment, as it established that Indiana DOI had no record of having received a written notice of termination of the insurance policy in question from ADMIRAL, and thus ADMIRAL was not in compliance with IC 34-18-13-4.

4. ADMIRAL clearly had gone through most of the machinations of canceling the insurance contract in question.

5. It was clear to the Court that ADMIRAL did not take the addition [sic] step necessary to cancel its obligation under the Policy that had been incorporated into its contract with Dr. Zadeh by Indiana Code 34-18-13-4. ADMIRAL did not notify the DOI, and thus the public, that a termination had been effectuated.

6. If any of the foregoing conclusions of law are, in fact, findings of fact, the Court incorporates them into the findings of fact portion of this Order.

**ORDER OF COURT**

**WHEREFORE**, for the foregoing reasons, it is ORDERED, ADJUDGED, and DECREED that:

1. ADMIRAL'S motion to strike was **GRANTED** in part and **DENIED** in part.

2. ADMIRAL'S motion for summary judgment was **DENIED**.

3. The Policy, via the incorporation of Indiana Code 34-18-13-4, was never terminated as it pertained to MUEHLMAN.

4. Accordingly, Dr. Zadeh was entitled to coverage under the Policy related to the MUEHLMAN case only.

5. These findings, conclusions, and declaratory judgment constitute a final and appealable order of the Court with regard to the issues presented and that no just reason for delay in seeking an appeal exists.

Appellant's Appendix at 7-13.

### *Discussion*

[15] The issue is whether the trial court erred in denying Admiral's motion for summary judgment or in entering declaratory judgment in favor of the Estate. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence

establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

[16] Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cty.*, 779 N.E.2d 1, 3 (Ind. 2002). The interpretation of a statute is a legal question that we review *de novo*. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 424 (Ind. 2015).

[17] To the extent the trial court granted declaratory relief, the Indiana Declaratory Relief Act is found at Ind. Code §§ 34-14-1. Ind. Code § 34-14-1-2 provides in part:

> Any person interested under a . . . written contract, or other
> writings constituting a contract, or whose rights, status, or other
> legal relations are affected by a statute . . . [or] contract . . . may
> have determined any question of construction or validity arising
> under the instrument, statute, [or] contract . . . and obtain a
> declaration of rights, status, or other legal relations thereunder.

[18] The trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Our standard of review is well settled:

> First, we determine whether the evidence supports the findings
> and second, whether the findings support the judgment. In
> deference to the trial court's proximity to the issues, we disturb

the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. In other words, "[a] decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court" or if the court misinterprets the law. *Kwolek v. Swickard*, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (quoting *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008)), *trans. denied*.

[19]     Admiral argues that Dr. Zadeh's undisputed failure to provide notice of a claim to it excludes Muehlman's claim from coverage, and asserts that the clear and unambiguous terms of the Policy required written notice with specific information to be timely filed within the policy period. Admiral asserts that Dr. Zadeh's notice in the October 25, 2011 letter from Banasiak was not timely and provided no information regarding the incident itself, the nature of the claim, the potential witnesses, or any knowledge from Dr. Zadeh regarding the damages or the circumstances by which he first became aware of the alleged incident.

[20] Admiral contends that Ind. Code § 34-18-13-4 does not apply and does not have the effect suggested by the trial court, and that, even if the Estate was correct that the Policy rendered its cancellation invalid, there is no language in the statute that also renders its notice and cooperation duties invalid. It asserts that the statute does not even apply to this situation and the statute's intent appears to be to protect a claimant who attempts to file a complaint before the DOI but is not then advised that a policy had been cancelled.

[21] Admiral states that while notice from the DOI is irrelevant, it is undisputed that Admiral did not receive such notice. It also contends that while prejudice is not required in these circumstances, it is difficult to see how Admiral was not prejudiced because Dr. Zadeh is subject to an entry of default, has not provided any medical records, and died in 2012, rendering closed any opportunity for Admiral to obtain his cooperation, witness recollection, or other information to either set aside the default or defend the medical malpractice claim.

[22] The Estate and Muehlman argue that Admiral received timely notice of Muehlman's claim and cites to the affidavit of Wilkins for the proposition that it is the practice of the DOI to forward a copy of all letters sent to a qualified healthcare provider to the healthcare provider's insurance carrier. They contend that a genuine issue of material fact exists as to whether Admiral received timely notice of Muehlman's claim because it may be inferred from Wilkins's affidavit that the DOI sent a copy of the October 6, 2008 letter addressed to Dr. Zadeh to Admiral, and that the cancellation is not effective as to Muehlman's claim pursuant to Ind. Code § 34-18-13-4.

[23]     We observe that the trial court concluded that Admiral established a *prima facie* showing in favor of granting it summary judgment, moving the burden onto the Estate to establish some issue of material fact. The record reveals that the first notification to Admiral of Muehlman's claim occurred in the October 25, 2011 letter sent by Dr. Zadeh's counsel, which was more than two years after the policy period expired on September 21, 2009, and more than one year and three months after the expiration of the Extended Claim Reporting Period on July 15, 2010.[4] Thus, the notification was late under the claims made Policy. *See Ashby v. Bar Plan Mut. Ins. Co.*, 949 N.E.2d 307, 312 (Ind. 2011) ("As expressed in *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, '[t]he notice provision of a "claims made" policy is not simply the part of the insured's duty to cooperate, it defines the limits of the insurer's obligation. If the insured does not give notice within the contractually required time period, there is simply no coverage under the

---

[4] These calculations do not include the sixty-day extension mentioned in the Policy which states that Admiral must "receive notice of a 'claim' within sixty (60) days after the expiration or termination date of this policy . . . ." Appellant's Appendix at 64. To the extent the Estate asserts that "counsel for Dr. Zadeh forwarded correspondence to Admiral [] on November 5, 2013 containing new information suggesting that Admiral may have received notice of the claim on or about October 15, 2008 from the" DOI, Appellant's Brief at 8, this statement conflicts with the statements of the Estate's counsel at the March 16, 2016 hearing at which he stated: "The Department of Insurance should have sent the lawsuit to Admiral Insurance, as they do in all cases. There's no evidence that they did that." Transcript at 24. With respect to the Estate's citation to Wilkins's affidavit for its argument that Admiral received timely notice of Muehlman's claim, Paragraph 4 of the October 28, 2013 affidavit of Wilkins states: "It is the practice of the Indiana Department of Insurance to forward a copy of all letters sent to a qualified healthcare provider to the healthcare provider's insurance carrier." Appellant's Appendix at 131. The trial court's order granted the motion to strike "that portion of paragraph 4 of Nancy Wilkins' affidavit of October 28, 2013 related to the practices the [sic] Indiana DOI in 2008 . . . ." *Id.* at 10. The Estate does not challenge the grant of the motion to strike. We also note that at oral argument, Muehlman's counsel acknowledged that he needed to rely on Ind. Code § 34-18-13-4 in order to prevail on appeal. Oral Argument at 21:40-22:00.

policy.' 733 N.E.2d 513, 522 (Ind. Ct. App. 2000) (internal citations omitted)[, *trans. denied*].").

[24] To the extent this case requires us to interpret Ind. Code § 34-18-13-4 and other provisions in the Medical Malpractice Act, the first step in statutory interpretation is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *Young*, 24 N.E.3d at 424. "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Id.* at 424-425 (quoting *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 157 (Ind. 2005)). But if a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Id.* at 425. Where a statute is ambiguous, our primary goal is to determine and give effect to the intent of the legislature. *Id.* "To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. We also examine the statute as a whole." *Id.* (quoting *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007) (internal citation omitted)).

[25] Ind. Code § 34-18-13-4 is titled "Included policy provisions" and provides:

> Every policy issued under this article (or IC 27-12 before its repeal) is considered to include the following provisions, and any change made by legislation adopted by the general assembly as fully as if the change were written in the policy:

(1) The insurer assumes all obligations to pay an award imposed against its insured under this article (or IC 27-12 before its repeal).

(2) A termination of this policy by cancellation initiated by the insurance company is not effective for patients claiming against the insured covered by the policy, unless at least thirty (30) days before the taking effect of the cancellation, a written notice giving the date upon which termination becomes effective has been received by the insured and the commissioner[5] at their offices.

(3) A termination of this policy by cancellation initiated by the insured is not effective for patients claiming against the insured covered by the policy, unless at least thirty (30) days before the taking effect of the cancellation, a written notice giving the date upon which termination becomes effective has been received by the commissioner at the commissioner's office.

[26] The focus of this statute is cancellation and the protection of a patient following the early cancellation of a policy which is not reported to the insurance commissioner. We cannot say that Ind. Code § 34-18-13-4 applies to this situation given that the Policy was still in effect at the time of the filing of Muehlman's complaint and the Policy had not yet been terminated by cancellation. Specifically, the initial policy period was from September 21, 2008, to September 21, 2009, with a "Retroactive Date" of September 21, 2005.

---

[5] Ind. Code § 34-18-2-8 provides: "'Commissioner' refers to the insurance commissioner."

Thus, at the point at which Muehlman filed her complaint against Dr. Zadeh on October 6, 2008, the Policy was in effect. We also note that the Policy terminated/expired by its own terms prior to Admiral receiving notice of Muehlman's claim. Under these circumstances, we cannot say that Ind. Code § 34-18-13-4 requires coverage of Muehlman's claim.

### Conclusion

[27] For the foregoing reasons, we reverse the trial court's denial of Admiral's motion for summary judgment and its entry of declaratory judgment in favor of the Estate.

[28] Reversed.

Vaidik, C.J., and Bradford, J., concur.