Jerry KWOLEK and Mary
Kwolek, Appellants,

v.

Rodney SWICKARD and Jennifer
Swickard, Appellees.

No. 64A05–1006–PL–372.

Court of Appeals of Indiana.

March 30, 2011.

Gregory A. Sobkowski, Bonnie C. Coleman, Hodges & Davis, P.C., Merrillville, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jerry and Mary Kwolek appeal the trial court's declaratory judgment in favor of Rodney and Jennifer Swickard. The trial court held that the Swickards have the right to park within an ingress-egress easement in a gravel area thirty-six feet wide by twenty-two and one-half feet deep in the front of their garage (the "disputed area"). We address the following three issues on appeal:

1. Whether the trial court correctly interpreted an ingress-egress easement to include a right to park within the easement;

2. Whether improvements the Kwoleks made to the easement must be removed because they materially interfere with the Swickards' enjoyment of the easement; and

3. Whether the Kwoleks acquiesced in the Swickards' parking behavior and, therefore, may not seek a remedy from the courts.

We hold that the trial court erred as a matter of law when it concluded that the terms "ingress" and "egress" include the additional right to park within the easement. We also hold that the trial court's order that the Kwoleks remove their improvements from the easement is clearly erroneous. Finally, we hold that, on this record, the Kwoleks are not barred by the doctrine of acquiescence from raising their claims. Accordingly, we reverse the trial court's judgment for the Swickards.

Gregory T. Babcock, Chesterton, IN, Attorney for Appellants.

## FACTS AND PROCEDURAL HISTORY

In 1978, the Swickards purchased their home and property, which they accessed via a private road off of U.S. 30, now known as 560 West. The Kwoleks also used 560 West to access their home. In the mid–1980s, the Indiana Department of Transportation made improvements to U.S. 30 and 560 West. As a result of those improvements, the Swickards lost legal access from their home to U.S. 30, and their property became landlocked.

In the early 1990s, the Swickards first learned that their property was landlocked when they attempted to refinance their mortgage. As a result, the Swickards approached the Kwoleks, their neighbors and the owners of the real property underlying 560 West, to request an ingress-egress easement over 560 West. The Kwoleks agreed to grant an easement to the Swickards. On October 8, 1993, the instrument that created the easement was recorded and stated in relevant part as follows:

> [The Kwoleks] . . . grant . . . unto [the Swickards] . . . an easement for a private road and right-of-way over and across the following described real property. . . . Said easement shall be non-exclusive and is intended to grant to the [Swickards] an ingress and egress to their property jointly with [the Kwoleks]. . . .

Appellants' App. at 21.

The easement is sixty feet wide, as was required by the Porter County Plan Commission. To facilitate the creation of the easement, in 1993 the Swickards conveyed (through a third-party) the eastern six feet of their real property to the Kwoleks, which became the western six feet of the easement. After that conveyance, the distance from the Swickards' east property line to the gravel surface of 560 West was twenty-two and one-half feet. The gravel surface of 560 West is another twenty-two feet wide.

Sometime in 2000, the Swickards built a three-car garage on their property. The garage is south of their house and is thirty-six feet wide and twenty-four feet deep. The garage faces east and is located nine feet from the Swickards' eastern property line. The Swickards constructed the garage pursuant to a building permit and complied with the applicable setback requirement. The Swickards added a three-foot concrete apron in front of the garage and then added twenty-eight and one-half feet of gravel from the concrete apron to 560 West. All but the western six-feet of that gravel area is within the easement. In other words, the concrete apron and the first six feet adjacent to the concrete apron are located on the Swickards' property, and the remaining twenty-two and one-half feet of gravel leading up to 560 West are located within the easement.

The Swickards own three vehicles, which they alternatively park in their garage or on the gravel area in front of their garage. When the Swickards have visitors, the visitors park their vehicles on the gravel area. The Swickards usually have visitors once a week. A vehicle parked in front of the Swickards' garage, with its front end even with the garage's concrete apron, would be parked partially on the Swickards' property and partially within the easement.

The Swickards' and Kwoleks' mailboxes are located on U.S. 30, and the Kwoleks' newspaper box is just south of U.S. 30 on the eastern edge of the easement. The Kwoleks drive from their home to get their mail and newspapers, and they use the gravel area in front of the Swickards' garage to turn around. Provided that not more than six cars are parked on the gravel area, there is room for the Kwoleks to turn around in that area.

In 2006, six years after the Swickards had built their garage and thirteen years after the Kwoleks had granted the easement, the Kwoleks called the local police to complain about cars parked within the easement in front of the Swickards' garage. In April of that year, Mr. Kwolek parked a car in the disputed gravel area in front of the Swickards' garage and left it there for six months. Later that year, he installed landscape timbers, metal posts, a no-parking sign, and numerous evergreen trees within the easement on the north side of the disputed area. On the south side, he installed metal posts, a no-parking sign, and miscellaneous evergreen trees. Mr. Kwolek also confronted the Swickards' children about parking on the disputed area within the easement. The Kwoleks made four more calls to the police in 2008.

On November 18, 2008, the Swickards filed a complaint for declaratory judgment against the Kwoleks, in which the Swickards sought to have the improvements Mr. Kwolek had placed within the easement removed. The Kwoleks timely filed their answer, asking the trial court to "reaffirm the language in the written [e]asement[,] which does not allow for any type of parking on the [e]asement area...." *Id.* at 18. The trial court held a bench trial on March 18, 2010.

On May 18, the court entered declaratory judgment for the Swickards. In its order, the court found, in pertinent part, the following facts:

14. [The] Swickards have parked their vehicles in the same place from the time they purchased their property in 1978 to the present.

15. [The] Swickards believed that they would be able to continue to park in the same place they had parked since 1978 after they obtained an ingress/egress easement from the Kwoleks.

\* \* \*

48. The Kwoleks did not begin objecting to [the] Swickards['] and their visitors['] parking in the gravel area in front of [the] Swickards' garage until 2006.

\* \* \*

64. The Swickards, by use of the [e]asement, have not exceeded their rights or unreasonably interfered with the Kwoleks' use of 560 West.

65. [The] Kwoleks acquiesced or impliedly consented to [the] Swickards['] and their visitors['] parking in the gravel area within the west 22 ½ of the [e]asement in front of where their garage is now located.

*Id.* at 6, 8–9. The court then concluded:

[The] Swickard[s] had continually parked in the same place on their property before and after the easement had been established. The area in which they wish to park is the very same spot they have parked since they first purchased the parcel.... The parking patterns of the Swickards do not interfere with the Kwoleks' use of the easement, as individuals may still freely continue to use the improved portion of the easement. Furthermore, through continual and open practice, [the] Kwolek[s] had full knowledge before the creation of the easement that [the] Swickard[s] and their guests parked within that portion of the granted easement. As such, continual parking in the driveway was fully foreseeable by the [Kwoleks] and otherwise should have been stipulated in the easement. As no obstruction of the ingress or egress to the easement is taking place with [the] Swickard[s'] parking habits, the terms of the 1993 easement are not violated.

The [e]asement should be construed in favor of the Swickards and against the Kwoleks. The installation of the improvements by [the] Kwolek[s] ... is

not consistent [with] nor incidental to the terms of the easement. The terms of the easement specifically granted an easement for a private road and right of way over and across [the] Kwolek[s'] real property. As co-owners of an easement of a private road, [the] Kwolek[s] are prohibited from altering the land in any manner as to render the easement appreciably less convenient or useful for one of [the] co-owners. As [the] Swickard[s] and their guests had traditionally always parked on that portion of their driveway before and after the garage was built[, the] Swickards' use of the [e]asement for parking is reasonably necessary to their enjoyment of the [e]asement. The easement no longer remains useful with the purposefully planted trees, shrubs, timbers and "No Parking" signs around the garage. As such, the improvements to the easement are not warranted and must be removed.

*Id.* at 11–12. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

In entering declaratory judgment for the Swickards, the trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. Our standard of review is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, *a judgment is clearly erroneous* under Indiana Trial Rule 52 *if it relies on an incorrect legal standard.* We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind.Ct.App.2010) (emphases added; citation and quotation omitted), *trans. denied.* In other words, "[a] decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court" or if the court misinterprets the law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind.2008).

The Kwoleks contend that the trial court misinterpreted the scope of the easement when it concluded that the easement permits the Swickards and their guests to park their vehicles within the easement on the Kwoleks' property, which is the servient estate. The Kwoleks also maintain that the trial court erred when it concluded that the Kwoleks' improvements materially interfere with the Swickards' enjoyment of the easement. We address each argument in turn. We then consider the Swickards' contention that we must affirm the trial court's judgment under the doctrine of acquiescence.

## Issue One: Scope of Easement

 The Kwoleks first assert that the trial court misinterpreted the scope of the easement.[1] As we have discussed:

It is well established that easements are limited to the purpose for which they are granted. The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. The servient owner may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. Moreover, owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement.

*McCauley*, 928 N.E.2d at 314 (citations and quotations omitted).

 Generally, "an easement for ingress and egress confers only the right to pass over the land rather than the more extensive right to partially control or alter the estate." *Id.* However, we must look to the express language of the instrument creating the easement itself to determine the intent of its creators. *Id.*

When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof. *[W]e interpret the grant as a matter of law from the plain and ordinary meaning of the language of the grant.* Particular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instrument as a whole. Any doubt or uncertainty as to the construction of the language of the easement will ordinarily be construed in favor of the grantee.

*Id.* at 314–15 (emphasis added; citations omitted). Our standard of review on the question of whether an easement is ambiguous is de novo. *Drees Co. v. Thompson*, 868 N.E.2d 32, 39 (Ind.Ct.App.2007), *trans. denied.* A document is ambiguous only when reasonable persons find it subject to more than one interpretation. *Id.*

Here, the relevant part of the instrument that granted the easement to the Swickards states as follows:

1. The Swickards suggest that the Kwoleks failed to preserve this issue for our review. We cannot agree. In their Answer, the Kwoleks expressly asked the court to "reaffirm the language in the written [e]asement[,] which does not allow for any type of parking on the [e]asement area...." Appellants' App. at 18. Further, the scope of the easement was a threshold issue before the trial court, and we will review the merits of its conclusion on appeal. *See, e.g., Van Prooyen Builders, Inc. v. Lambert*, 911 N.E.2d 619, 621 (Ind.Ct.App. 2009), *trans. denied.*

[The Kwoleks] ... grant ... unto [the Swickards] ... an easement for a private road and right-of-way over and across the following described real property....

Said easement shall be non-exclusive and is intended to grant to the [Swickards] an ingress and egress to their property jointly with [the Kwoleks].... Appellants' App. at 21.

On appeal, the Kwoleks contend that the text of the instrument unambiguously limits the scope of the easement to ingress and egress. Thus, the Kwoleks continue, "[t]he Court should not have used the Swickards' testimony[,] which outlined their habit and routine of parking[,] as evidence to decide what the easement document meant.... [T]he [e]asement [document] needed no interpretation and no parking is allowed on the easement by the Swickards or their visitors." Appellants' Br. at 5. In response, the Swickards assert that "it is clear that an easement for a private road and right of way was granted, subject to a non-exclusive right of ingress and egress...." Appellees' Br. at 10. That is, the Swickards argue that the instrument did not create a limited easement, but, rather, "a general ... easement for a private road and right of way ... [that] is not modified by nor restricted to ingress and egress." *Id.* at 10–11. We must agree with the Kwoleks.

The easement unambiguously conferred upon the Swickards the right to use the Kwoleks' property for the limited purpose of ingress to and egress from their own property. Again, it is the parties' intent, as reflected in the language of the document that created the easement, that controls the interpretation of that document. The Swickards' argument on appeal ignores the document's most salient language: "Said easement ... is intended to grant to the [Swickards] an ingress and egress to their property...." Appellants' App. at 21. That language is clear. And, contrary to the Swickards' assertions, the term "private road" in the preceding sentence only provides context to the conveyance of the ingress-egress easement. *See Drees Co.,* 868 N.E.2d at 40. That is, the right to use the private road was conveyed for the limited purpose of permitting the Swickards ingress to and egress from their property over and across that road.

The plain meaning of the terms "ingress" and "egress" do not include parking. "Ingress" is "[t]he act of entering." Black's Law Dictionary 786 (7th ed.1999). And "egress" is "[t]he act of going out or leaving." *Id.* at 534. Indeed, it is well settled under Indiana law that "there is no ambiguity in applying the terms 'ingress and egress.'" *Drees Co.,* 868 N.E.2d at 39. Thus, the easement does not confer upon the Swickards the additional right to park vehicles within the easement. The trial court's consideration of extrinsic evidence to define the scope of the easement, rather than merely the plain terms of the instrument which created the easement, was clearly erroneous. *See McCauley,* 928 N.E.2d at 315.

Still, relying first on *Wendy's of Ft. Wayne, Inc. v. Fagan,* 644 N.E.2d 159, 163 (Ind.Ct.App.1994), and *McCauley,* the Swickards contend that they have the right to park their vehicles on the easement because parking is a right that is necessarily incident to their enjoyment of the easement. It is true that "the owner of an easement possesses all rights necessarily incident to the enjoyment of the easement...." *Wendy's,* 644 N.E.2d at 163. In *Wendy's,* we held that the dominant estate holder was permitted to place within the easement a directional sign marking the location of the easement, reasoning that "[a] sign directing customers and suppliers to that road is necessary to

fulfill the easement's purpose of providing ingress and egress to [the dominant estate holder's] business." *Id.* And in *McCauley*, we held that the dominant estate holders' "use and enjoyment of the easement for ingress and egress includes the right . . . to construct a roadway over all or any part of the easement." 928 N.E.2d at 315.

But an implied right to park is not equivalent to the placement of directional signs within the easement. *See Wendy's*, 644 N.E.2d at 163. Nor is parking equivalent to the paving of an easement to facilitate the dominant estate holder's ingress and egress. *See McCauley*, 928 N.E.2d at 315. The Swickards' reliance on *Wendy's* and *McCauley* is misplaced.

The Swickards also rely on a 1943 opinion of our Supreme Court and an opinion of the Appellate Court of Connecticut. In *Andrews v. City of Marion*, 221 Ind. 422, 47 N.E.2d 968 (Ind.1943), our Supreme Court considered the validity of a parking meter ordinance adopted by the City of Marion. Property owners in the City sought invalidation of the ordinance after the area in front of their property was designated as public parking. In considering the City's statutory authority for its ordinance, the court noted that "the parking of automobiles is an incident of motor vehicle traffic," which was within the City's proper exercise of its police power. 47 N.E.2d at 970. The court then stated as follows:

> Parking is considered as a privilege of the public and incidental to the use of the street for travel. When the abutting property owner parks his automobile in front of his property he does so as a member of the public and in so doing is subject to reasonable traffic and parking

regulations. *The abutting owner's right of ingress and egress does not include the privilege of storing his automobile in front of his property.*

*Id.* at 971 (emphasis added). We are at a loss to see how the holding in *Andrews* favors the Swickards. Rather, that opinion makes it clear that parking is not a right incident to an abutting property owner's right of ingress and egress. In any event, the issue here is a private easement, not parking on a public street or the validity of a municipal parking ordinance. As such, *Andrews* is both inapposite and unpersuasive.

Neither is the case law from Connecticut helpful to the Swickards' claim. In *Hagist v. Washburn*, 16 Conn.App. 83, 546 A.2d 947 (1988), the Appellate Court of Connecticut considered whether an easement permitted the dominant estate holders to park their vehicles within the easement. The language of the instrument that created the easement stated as follows:

> Together with a right of way by foot and vehicle, over, upon and across a certain strip of land located westerly of the westerly line of the hereinabove described property, and being bounded and described as follows: . . . Said right-of-way crossing property conveyed on November 14, 1969. . . .

*Id.* at 949. The appellate court held that the instrument was written in general terms and, as such, parking was not prohibited by the general grant of a right-of-way. *Id.* at 949–50.

Here, unlike the instrument in *Hagist*, the instrument that created the easement specifically limited its scope to ingress and egress. Thus, *Hagist* is inapposite.[2] This

---

2. Likewise, the Swickards cite *New York Central Railroad Co. v. Yarian*, 219 Ind. 477, 39 N.E.2d 604 (1942), for the proposition that, "[w]hen the grant is general in description, evidence of the intended purpose and the actual use are considered by the court when determining the reasonableness of the actual use." Appellees' Br. at 14. But, again, the

point was emphasized in a 2007 Connecticut appellate opinion, which expressly distinguished *Hagist* on these very grounds. Specifically, in *Leposky v. Fenton*, 100 Conn.App. 774, 919 A.2d 533, 537 (2007), the Appellate Court of Connecticut held:

> We conclude, on the basis of the clear language of the deed, that the plaintiffs' rights under the easement are limited to ingress and egress and do not include the right to use the right-of-way to park vehicles or to store a boat thereon. In *Hall v. Altomari*, 19 Conn.App. 387, 391, 562 A.2d 574 (1989), this court concluded that language granting a right-of-way for purposes " 'to and from' " limited the plaintiff's rights to ingress and egress, reasoning that the language was not in general terms and, therefore, could not be construed to include the right to park vehicles. Indeed, it is well established that "a right-of-way *granted in general terms may be used for any purpose reasonably necessary* for the party entitled to use it." (Emphasis added.) *Hagist v. Washburn*, 16 Conn.App. 83, 86, 546 A.2d 947 (1988). *In the present case, the language creating the right-of-way explicitly limits the plaintiffs' easement rights to ingress and egress. This court "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity."* (Internal quotation marks omitted.) *Pender v. Matranga*, 58 Conn.App. 19, 25, 752 A.2d 77 (2000). Because the right-of-way is not granted in general terms, the court's reliance on the doctrine of reasonable use to expand the easement to include parking and storage rights was misplaced.

(Second emphasis added; citation omitted.) This rule, that ingress and egress means just that, and nothing more than that, has also been recognized in Florida,

New York, and Ohio. *See Avery Dev. Corp. v. Village by the Sea Condo. Apartments, Inc.*, 567 So.2d 447, 448–49 (Fla.Dist.Ct. App.1990) ("The right to park could not be created by its omission from an easement which granted the right of ingress and egress."); *Franco v. Piccilo*, 49 A.D.3d 1182, 853 N.Y.S.2d 789, 789 (N.Y.App.Div. 2008) ("The right of egress and ingress does not confer upon dominant tenants the right to park vehicles along the right of way.") (quotation omitted); *Cleveland v. Clifford*, 121 Ohio App.3d 59, 698 N.E.2d 1045, 1047–48 (1997) ("the trial court erred in ... permitting parking in a portion of the ... easement for ingress and egress.").

In sum, parking is not a right incident to the enjoyment of an ingress-egress easement. Again, the nature and extent of a written easement is first determined by the text of the instrument that created it. The trial court stated that the easement should be construed in favor of the Swickards and against the Kwoleks. But where, as here, the text is explicit, there is no ambiguity to be construed. *See McCauley*, 928 N.E.2d at 315. Accordingly, the trial court erred as matter of law when it determined that parking was within the scope of the easement.

### Issue Two: Impairment of Ingress–Egress Rights

■ The Kwoleks next contend that the trial court, having misinterpreted the scope of the easement, also erred when it ordered them to remove the trees, bushes, posts, and other improvements from the easement. The Swickards respond that the improvements materially impaired their ability to use the easement for two reasons. The Swickards' first reason, which is also a rationale relied upon by the trial court, is predicated on the erroneous theory that they are permitted to park

---

easement here was not general but was ex- pressly limited in scope to ingress and egress.

within the easement. But as explained above, the easement is limited in its scope to ingress and egress. Insofar as the trial court's reasoning is premised on its conclusion that the improvements interfere with the Swickards' right to park within the easement, the order for removal is clearly erroneous. *See id.* 313. Accordingly, the only remaining question is whether the Kwoleks' improvements impaired the Swickards' ingress to or egress from their property.

The Swickards' second rationale is that, by placing the improvements within the easement, the Kwoleks have reduced the effective size of the easement from sixty feet to twenty-two feet in width, the width of the gravel roadway. The trial court found that, with the improvements, "[t]he easement no longer remains useful." Appellants' App. at 11. But there is no evidence, and the trial court made no findings, that the Swickards ever used any part of the easement that is not spread with gravel for ingress and egress. As such, the suggestion that the Kwoleks' improvements actually interfered with the Swickards' right of ingress and egress is not supported by the record.

The Swickards also contend that they may park within the disputed area of the easement so long as their parking does not interfere with the Kwoleks' enjoyment of the easement. That is not necessarily so. While the Swickards and the Kwoleks jointly share a nonexclusive ingress-egress easement, they do not otherwise have the same rights in the real estate. The land underlying the easement remains the Kwoleks' real property, and they may exclude uses upon it that are not within the scope of the rights granted by the easement. Further, "[t]he owner of the property over which the easement passes ... may use his property in any manner and for any purpose consistent with the enjoyment of

the easement...." *McCauley,* 928 N.E.2d at 314. The Kwoleks' improvements may interfere with the Swickards' parking, but, again, there is no evidence that the improvements, which are located outside the twenty-two foot wide gravel access road itself, have interfered with either family's ingress and egress. Thus, the Kwoleks are entitled to improve their property as they did, and the trial court's order for the Kwoleks' to remove those improvements is clearly erroneous.

### Issue Three: Acquiescence

■■■ Finally, we address the trial court's comments, and the Swickards' brief, secondary argument, that the Kwoleks acquiesced in the Swickards' parking behavior and, therefore, that the Kwoleks cannot maintain their defenses to the Swickards' declaratory judgment action. In general, "[a] person with full knowledge of the facts and aware of his rights who nevertheless stands by and acquiesces in conduct inconsistent with those rights may be estopped from subsequently asserting those rights." *Miller v. Geels,* 643 N.E.2d 922, 930 (Ind.Ct.App.1994), *trans. denied.* In that broad sense, the doctrine of acquiescence and its companion, estoppel, may arise in many contexts.

■■■ However, where, as here, an interest in real property is at issue, the doctrine of acquiescence is a seldom used, nearly dormant doctrine that has been limited in Indiana case law only to boundary-line disputes or the location of an easement. As Judge Friedlander recently clarified in a case involving a boundary-line dispute:

acquiescence is not a separate theory for acquiring ownership of another person's real property not by providing compensation, but instead by openly using the land as if he or she was the true owner. It does not stand with the doctrine of adverse possession as an alternate theo-

ry to be applied in the same circumstances as adverse possession. Rather, acquiescence applies only when a specific set of circumstances exists—circumstances in which adverse possession does not apply. That set of circumstances is this: Two adjoining property owners (1) share a good-faith belief concerning the location of the common boundary line that separates their properties and, (2) although the agreed-upon location is not in fact the actual boundary, (3) use their properties as if that boundary was the actual boundary (4) for a period of at least twenty years. It is the original agreement between the adjoining owners that takes this and all other "acquiescence" cases out of the realm of adverse possession.

The doctrine of acquiescence has lain largely dormant in real estate litigation since the end of the nineteenth century, and understandably so, given not only the very narrow set of circumstances in which the doctrine may be invoked, but also the continuing evolution of land surveying, legal descriptions of property, and recording real estate transactions. It is my hope that these comments will prolong that slumber.

*Huntington v. Riggs*, 862 N.E.2d 1263, 1274 (Ind.Ct.App.2007) (Friedlander, J., concurring [3]), *trans. denied.*

█ Although, as discussed in detail in the *Huntington* opinion, the doctrine of acquiescence generally concerns boundary-line disputes, it may also arise in easement-location disputes. Thus, the Swickards cite as support for their acquiescence claim our opinion in *Henning v. Neisz*, 148 Ind.App. 576, 268 N.E.2d 310 (1971). In that case, the dominant estate holder used an easement to access his landlocked prop-

erty. The servient estate holder changed the location of the easement, and for five years and three months the dominant estate holder used the relocated easement without objection. The dominant estate holder then filed an action against the servient estate holder to have the easement returned to its original location.

The trial court rejected the dominant estate holder's request, and, on appeal, we affirmed:

Dissatisfaction with a newly relocated easement should be made timely and expressed perspicuously so that the intent to completely reject the relocated easement is not left in doubt. All future action should reinforce without qualification the express declaration of complete rejection.... We are not suggesting that suit must be brought immediately upon learning of a proposed relocated easement. We are of the opinion that if a relocated easement is unacceptable then a timely expression of complete rejection and dissatisfaction should be made. Any action which would tend to deceive or mislead may constitute sufficient grounds for a court to find acquiescence or an implied consent to the relocated easement.

In the case before us, the trial court found from five (5) years and three (3) months of inaction on the part of the appellant that he had acquiesced in the relocation of the road and had in effect given his implied consent. Once implied consent to the relocation of an easement has been given, it cannot be withdrawn for the purpose of bringing suit. We must concede that the filing of a lawsuit is perhaps one of the strongest expressions of dissatisfaction that can be ad-

---

**3.** Judge Friedlander's concurring opinion in *Huntington* was joined in full by the other two panel members, Judge Kirsch and Judge Ri- ley. As such, his separate opinion has the full weight of a unanimous panel opinion.

vanced, but it cannot overcome the stronger presumptive forces put into motion by the appellant for such a long period of time prior to filing suit.

*Henning,* 268 N.E.2d at 316. The easement in *Henning* was not well defined but was "a way of necessity granted in very general terms." *Id.* at 313.

▆▆▆▆▆▆ *Henning* is inapposite on these facts. The doctrine of acquiescence may, on proper facts, be applied to settle the location of an otherwise poorly defined easement or a boundary-line dispute. But the doctrine does not apply where, as here, the question presented is the scope of the rights granted by an express easement. In effect, the Swickards' argument on this issue is that they have both a contractual right to ingress and egress under the written easement as well as a prescriptive right to park in the disputed area. But acquiescence is only one element to be considered in a prescriptive use claim. *See, e.g., Bauer v. Harris,* 617 N.E.2d 923, 927 (Ind.Ct.App.1993) (prescriptive easement is established in part by continuous adverse use with knowledge and acquiescence of servient owner). And it is well settled that the doctrine of acquiescence "does not stand with the doctrine of adverse possession" or the *doctrine* of easement-by-prescription. *See Huntington,* 862 N.E.2d at 1274 (Friedlander, J., concurring). Thus, the trial court's reliance on the doctrine of acquiescence, on these facts, was misplaced.

Neither may we affirm the trial court's judgment on the theory that the Swickards established a prescriptive easement. "[A]

claimant cannot prevail on a prescriptive easement claim if he fails to prove any one of the four elements of control, intent, notice, and duration." *Bass v. Salyer,* 923 N.E.2d 961, 966 (Ind.Ct.App.2010). Here, the Swickards concede that their argument for a prescriptive easement "is not developed as it relates to these facts." [4] Appellees' Br. at 24 n. 3. We agree and, thus, will not consider this theory.

## Conclusion

In sum, we hold that the trial court erred as a matter of law when it concluded that the easement grants to the Swickards the right to park within the easement. To the contrary, the easement is expressly limited by its terms to ingress and egress, and, absent a cogent prescriptive claim, evidence of use cannot be used to expand the scope of the easement beyond its explicit terms. We also hold that the court's order for the Kwoleks to remove their improvements from the easement is clearly erroneous in that the improvements do not interfere with the Swickards' ingress and egress. Finally, we hold that the doctrine of acquiescence does not apply here and, therefore, does not bar the Kwoleks from raising their claims. Thus, the trial court's judgment for the Swickards is clearly erroneous, and it must be reversed.

Reversed.

DARDEN, J., and BAILEY, J., concur.

---

4. Similarly, although the trial court found that the Swickards could not park to the north of their garage due to the grade of the land or to the south of their garage due to an underground septic system, the trial court did not state whether the Swickards could move their garage farther west onto their property, or why the Swickards built their garage near-

ly adjacent to the Kwoleks' property in the first place. And the Swickards do not suggest on appeal that they should be permitted to park on the Kwoleks' property as a matter of necessity. We, therefore, do not consider those issues. *See* Ind. Appellate Rule 46(A)(8)(a).