**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**J. R. BUILTA**
**JONATHON T. COOK**
Sansberry Dickmann Freeman Builta & Cook
Anderson, Indiana

ATTORNEY FOR APPELLEES:

**WILLIAM BYER, JR.**
Byer & Byer
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PIZZA KING OF ELWOOD, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1302-PL-148 |
| | ) | |
| THE PENIEL GROUP, DOLLAR GENERAL STORES, and ELWOOD HOLDINGS, LLC, | ) ) ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Joseph R. Kilmer, Master Commissioner
The Honorable Angela Warner Sims, Judge
Cause No. 48C01-0601-PL-51

**November 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

Two adjoining business owners held reciprocal easements for access to their establishments off the public highway. Can one of the owners later grant use of the easements to a nearby shopping center without the other's consent? The trial court said yes. We think the applicable common law is to the contrary, and therefore reverse.

FACTS AND PROCEDURAL HISTORY

In 1984, Linda Kane and her husband Charles Kane bought a bowling alley in Elwood called Lucky Strike Lanes. In 1997, they bought the neighboring Pizza King restaurant just east of Lucky Strike. To access both businesses, Linda and Charles used a drive that starts at State Road 13 and stretches west across the north side of both parcels.

Linda and Charles later divorced. As a result of the dissolution, Linda became the owner of Pizza King and Charles took Lucky Strike. The 2003 deed conveying Linda's interest in Lucky Strike to Charles also conveyed "an easement for ingress and egress purposes only over and along" the Pizza King portion of the drive ("the Pizza King easement"). Defendant's Ex. E.

North of Lucky Strike and Pizza King on the other side of the drive is a property owned by Elwood Plaza, LLC containing a strip mall. In 2004, Charles signed a written agreement giving Elwood Plaza an easement along the entire drive, including the Pizza King easement, for its own use. The same day, Elwood Plaza gave Charles an easement along a path on the west side of the strip mall stretching north to a public road.

In 2005, Elwood Plaza sold its parcel and the strip mall to Elwood Holdings, LLC. Under management of The Peniel Group, Elwood Holdings enlarged the strip mall, and a

2

Dollar General store moved into the new portion directly across the drive from Pizza King. Pizza King's front entrance now faces the back of Dollar General.

Linda noticed delivery trucks and semis using the Pizza King easement to access the loading dock behind Dollar General. When these vehicles stopped in the drive, Pizza King and Lucky Strike customers could not get through. Linda complained to The Peniel Group and Dollar General to no avail.

In 2006, Pizza King filed a complaint against Elwood Holdings, The Peniel Group, and Dollar General to prevent their use of the Pizza King easement and to request damages. The defendants claimed their use was authorized.

After a 2012 bench trial, the court entered findings and conclusions determining that because Linda granted Charles the Pizza King easement without explicitly restricting his ability to give it to others, his grant to Elwood Holdings was valid. It also concluded that the easement was only for ingress and egress and that the defendants were responsible for part of its upkeep. It thus denied Pizza King's injunction request but ordered the defendants to pay damages and to stop parking on the easement. Pizza King now appeals.

ISSUE

Did the trial court err by concluding that Lucky Strike could grant use of its easement to the shopping center without consent from Pizza King?

DISCUSSION AND DECISION

When a trial court enters findings and conclusions, we determine whether the evidence supports the findings and then whether the findings support the judgment. *Rehl*

3

*v. Billetz*, 963 N.E.2d 1, 5 (Ind. Ct. App. 2012). We may not set aside the findings or judgment unless they are clearly erroneous. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.*

Pizza King does not dispute any of the trial court's findings, including that Linda gave Charles the Pizza King easement when she conveyed to him her interest in Lucky Strike. Rather, Pizza King challenges the conclusion that Charles had the authority to give that easement to the shopping center defendants for their own benefit.

Easements are limited to the purpose for which they are granted. *Kwolek v. Swickard*, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011), *trans. denied*. The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. *Id.* The owner of the property over which the easement passes, known as the servient estate, may not use her land in a manner that obstructs the easement or interferes with the enjoyment thereof by the dominant estate. *Id.* On the other hand, the dominant estate cannot subject the servient estate to extra burdens. *Id.*

Generally, an easement for ingress and egress confers only the right to pass over the land rather than the more extensive right to partially control or alter the estate. *Id.* Of course, the express language of the instrument creating the easement is evidence of the intent of its creators. *Id.*

This Court recently cited with approval the following description of how to treat an easement when the document is specific and what to do when it is not:

> If the grant or reservation is specific in its terms, it is decisive of the limits of the way. . . . On the other hand, where a conveyance of a right-of-way does not specifically define it, the general rule as variously stated is that the

4

grantee is entitled to, and only to, such a way as is reasonably necessary and convenient for the purposes for which it was created. In other words, a right-of-way easement created by a conveyance in general terms and without any restrictions on its use is to be construed as broad enough to permit any use that is reasonably connected with the reasonable use of the land to which it is appurtenant.

28A C.J.S. *Easements* § 198 (2008) (footnotes omitted), cited in *Murat v. S. Bend Lodge No. 235 of the Benevolent & Protective Order of Elks*, 893 N.E.2d 753, 756 n.2 (Ind. Ct. App. 2008), *trans. denied.*

The 2003 deed by which Linda granted the easement to Charles conveyed "an easement for ingress and egress purposes only over and along" the portion of the drive owned by Pizza King. Defendant's Ex. E. The deed, the primary purpose of which was to transfer Linda's interest in Lucky Strike to Charles, shows a clear intent to give Charles, his employees, his customers, and his suppliers a way to reach his business from State Road 13, passing Pizza King on the way. This conclusion is buttressed by the fact that the evidence shows the drive was the only way to reach Lucky Strike at the time of the transaction.

Because of the easement's limited purpose, Charles did not have the authority to extend its use to Elwood Holdings. Doing so clearly subjected Pizza King to extra burdens. Linda testified that delivery trucks and semis used the easement to reach Dollar General's loading dock, that Pizza King customers could not get through when the trucks and semis stopped on the easement, that garbage trucks used the easement to pick up trash from Dollar General's dumpsters, and that the large vehicles providing deliveries and other services to Dollar General damaged the asphalt.

The defendants nonetheless urge that they should prevail because they had already been granted the Pizza King easement even before Linda and Charles first bought the restaurant in 1997. They point to language in the 1997 deed conveying the Pizza King parcel to Linda and Charles, *see* Plaintiff's Ex. 2, and the subsequent deed conveying Charles's interest in Pizza King to Linda pursuant to the dissolution, *see* Defendant's Ex. A, both of which indicate the parcel was subject to an easement on its north side. Nothing in those deeds, however, identifies a dominant estate, much less names any predecessor of Elwood Holdings. *See Oakes v. Hattabaugh*, 631 N.E.2d 949, 952 (Ind. Ct. App. 1994) (no easement created where deed identified location of easement and servient estate but failed to identify dominant estate), *trans. denied*.

The defendants also claim they already had a right to the easement by directing us to the 2004 agreement in which Charles purportedly gave the Pizza King easement to Elwood Plaza. There, it states that Charles was willing to "allow Elwood Plaza to *continue to use* the Original Easement" subject to certain terms. Defendant's Ex. B (emphasis added). This merely begs the question. In any event, as Pizza King asks, why would Elwood Plaza bother to make a deal with Charles for the Pizza King easement if it had some right of use already in existence?

We therefore conclude the trial court erred by determining that the defendants have a valid easement on Pizza King's property.[1]

## CONCLUSION

---

[1] Given that Pizza King's complaint alleged the defendants were using its property without authorization, we disagree with the defendants' contention that any act of Pizza King failed to put them on notice to provide the trial court with documents showing an independent right to the easement.

Reversed.

BARNES, J., and BRADFORD, J., concur.