


FILED

Jun 06 2025, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# I N T H E
# Court of Appeals of Indiana

Kelly Miller,

*Appellant*

v.

Robert L. Lucas, Pamela S. Lucas, Christopher A. Shrock, Dixie M. Gary, Kevin D. Hayes, Samantha L. Pinkerton and Randall D. Woods,

*Appellees*

June 6, 2025

Court of Appeals Case No.
24A-PL-2451

Appeal from the Kosciusko Circuit Court

The Honorable Michael W. Reed, Judge

Trial Court Cause No.
43C01-2201-PL-8

**Opinion by Judge Brown**
Chief Judge Altice and Judge Tavitas concur.


**Brown, Judge.**

[1] Kelly Miller appeals the trial court's judgment that a portion of his property is subject to an exclusive easement. We affirm.

**Facts and Procedural History**

[2] Phillip Kuhn ("Phillip") recorded the "Plat of Kuhn's First Addition to Kuhn's Plat" (the "First Addition Plat") on October 8, 1928, in the Office of the Recorder of Kosciusko County. Exhibits Volume III at 7. The First Addition Plat provided in part:

> Unplatted ground South of these lots on the lake is for the exclusive use of lot owners of this plat, to be used as a boat landing.

*Id.*[1] Charles Kuhn ("Charles"), Phillip's son, recorded the "Kuhn's Second Addition to Kuhn's Plat" (the "Second Addition Plat") on December 20, 1940. *Id.* at 10. The Second Addition Plat depicts a portion of Lot 11 of the Second Addition Plat ("Lot 11") within the boundaries of the Easement Area. In 2020,

---

[1] We will refer to the "[u]nplatted ground South of these lots on the lake," as the "Easement Area."

Steven Read and Kelly Read conveyed Lot 12, Lot 13, and a portion of Lot 11 of the Second Addition Plat to Miller.

[3] On January 21, 2022, Robert L. Lucas, Pamela S. Lucas, Christopher A. Shrock, Dixie M. Gary, Kevin D. Hayes, Samantha L. Pinkerton, and Randall D. Woods (collectively, "Plaintiffs"), filed a Complaint for Declaratory Judgment against Miller, Ronald C. Watson, and Richard Kevin Dedecker (collectively, "Defendants"). Plaintiffs alleged that they were owners of lots in the First Addition Plat, that Defendants claimed ownership of portions of Lot 11 in the Second Addition Plat, and that Plaintiffs were "entitled to a judgment declaring the area designated on the [First Addition Plat] as [a] boat landing to be available exclusively for the use of owners of lots in the [First Addition Plat]." Appellant's Appendix Volume III at 133. The court entered default judgment against Watson and Dedecker. Miller filed a counterclaim and third-party complaint to quiet title.[2] Miller moved for summary judgment, which the court denied.[3]

[4] On May 28, 2024, the court held a bench trial at which it heard testimony and admitted documentary evidence including the First Addition Plat, the Second

---

[2] In the third-party complaint, Miller named two third-party defendants who he alleged were record owners of lots in the First Addition Plat. In his counterclaim, Miller requested a judgment quieting title to the portion of Lot 11 conveyed to him by deed in 2020 and alleged that he and his predecessors in title satisfied the elements of adverse possession as to that portion of Lot 11.

[3] In support of his request for summary judgment, Miller argued in part that, "[e]ven if [his] right to use the 'boat landing' by way of his ownership of Lot 13 were held to be invalid, he would have a prescriptive easement in the boat landing." Appellant's Appendix Volume III at 164. The court found there were several genuine issues of material fact making summary judgment inappropriate.

Addition Plat, surveys, photographs, and recorded conveyance instruments. The court admitted exhibits showing that Phillip died in 1936, leaving certain real property to his son Charles. It also admitted evidence of a warranty deed dated May 24, 1944, (the "1944 Deed") pursuant to which Charles conveyed Lot 13 in the Second Addition Plat ("Lot 13") to R.B. and Mae Correll.[4]

[5] On September 12, 2024, the trial court issued Findings of Fact, Conclusions of Law, and Judgment. The court concluded that the language in the First Addition Plat "stating that the 'unplatted ground South of these lots on the lake is for the exclusive use of lot owners of this plat, to be used as a boat landing' is an express grant of an exclusive easement to the lot owners" in the First Addition Plat and that "the express grant quoted above contains no ambiguity." Appellant's Appendix Volume II at 22. It found the phrase "lot owners of *this* plat" refers to the owners of the lots in the First Addition Plat. *Id*. at 23. It also found "[t]he plain meaning of a boat landing area connotes a right of entry to the lot owners of [the First Addition Plat] to the specified area for the purpose of lake access, mooring boats, loading and unloading personal watercraft, placement of piers, communal area for First Addition [Plat] residents to gather while accessing the boat landing area, and general enjoyment of the boat landing area." *Id*. at 24.

---

[4] The 1944 Deed also stated: "The grantees and their assigns shall have the right to the common use of the public boat landing adjacent to [the First Addition Plat] . . . ." Exhibits Volume III at 16.

The court concluded that "the express provision of exclusivity in the easement granted to the lot owners in [the First Addition Plat] for the [Easement Area] favors *only* the lot owners in [the First Addition Plat], to the exclusion of all other[s], including the titleholder of the servient estate," *id*. at 25, and cited *Crowe v. Drenter*, 215 N.E.3d 1107 (Ind. Ct. App. 2023), *trans. denied*. It further found that Charles's "attempts to convey additional rights of a previously established exclusive easement violated the terms of the original express grant of the exclusive easement to the lot owners of [the First Addition Plat] and are thus, void." *Id*. at 28. The court ordered "[t]he portion of Lot 11 . . . which encroaches into the [Easement Area] is held to be subject to the exclusive rights of the lot owners" in the First Addition Plat.[5] *Id*. at 29.

## Discussion

The trial court's findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id*. When a court has made special findings of fact, we first determine whether the evidence supports the trial court's findings of fact and then determine whether those findings of fact support the trial

---

[5].With respect to Miller's counterclaim, the court found that Miller "is the only person with record title" to the potion of Lot 11 conveyed to him by deed in 2020, Appellant's Appendix Volume II at 28, and thus the court did not address his adverse possession claim.

court's conclusions. *Id.* Findings will only be set aside if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. *Newforth v. Bault*, 120 N.E.3d 594, 599 (Ind. Ct. App. 2019) (citation omitted). We evaluate questions of law de novo. *Id.* We will affirm a judgment where we find substantial supporting evidence, unless we are left with a definite and firm conviction that a mistake has been made. *Id.*

[8] Miller argues the trial court erred in determining that the "exclusive easement" bars him from using or accessing Lot 11 even if his use does not interfere with the First Addition Plat owners' use of the easement. Appellant's Brief at 20. He contends the court's reliance on *Crowe* is misplaced and, "[a]s the footnotes in *Crowe* further explained, 'exclusive' does not typically bar the rights of the servient owner from using the property." *Id*. at 21. He asserts the court "impermissibly expanded the easement when it expanded the plain meaning of a boat landing area to include it being a communal area for First Addition [Plat] residents to gather while accessing the boat landing area, and general enjoyment of the boat landing area." *Id*. at 25. He also asserts that he has the right to use the Easement Area based on the "Granting Language" in the 1944 Deed. *Id*. at 26.

[9] Plaintiffs argue that Miller does not challenge the evidence supporting the trial court's factual findings and that the court's conclusion regarding the exclusive nature of the easement was not clearly erroneous and was supported by the

evidence. They argue that Miller "cites to footnote five (5) in *Crowe* which explains that in the context of roadway or driveway easements, the term exclusive does not 'typically' or 'frequently' bar the rights of the servient owner from the using the property," and "[h]owever, in this case, the grantor expressly intended to grant an exclusive easement in favor of the lot owners in [the First Addition Plat] to the [Easement Area], to the exclusion of *all* others." Appellees' Brief at 16.

[10] The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. *Crowe*, 215 N.E.3d at 1114 (citing *Kwolek v. Swickard*, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011), *trans. denied*). The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. *Id*. The owner of the property over which the easement passes is known as the servient estate. *Id*. "When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof." *Id*. at 1115. We interpret the grant as a matter of law from the plain and ordinary meaning of the language of the grant. *Id*. Particular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instrument as a whole. *Id*. Any doubt or uncertainty as to the construction of the language of the easement will ordinarily be construed in favor of the grantee. *Id*.

[11]     In *Crowe*, we noted language in a deed which created "an easement for a private road and right-of-way over and across" certain property.  *Id*. at 1116.  The private road extended from Drenter's property along the property line of the parcel on which Crowe lived and partially on and across her parcel to a county road.[6]  *Id*. at 1110.  We held:

> The parties do not dispute the location of the Access Road Easement relative to the Drenter Parcel or the LJK Parcel [where Crowe lived], that the easement is located partially on the LJK Parcel, or that both parties use the easement to access their respective parcels from the county road.  The parties disagree as to whether Drenter may exclude Crowe from using the Access Road Easement for ingress and egress.
>
> "Generally, exclusivity should be clearly evidenced in the grant of the easement."  *Bratton v. Yerga*, 588 N.E.2d 550, 554 (Ind. Ct. App. 1992) (citing *Brown v. Heidersbach*, 172 Ind. App. 434, 442, 360 N.E.2d 614, 620 (1977)).  "Absent an affirmative restriction, the titleholder of the servient estate may make any use of the easement which would not materially impair or unreasonably interfere with the use of the easement by the dominant estate titleholder."  *Brown*, 172 Ind. App. at 442, 360 N.E.2d at 620 (citing *Smith v. Holloway*, 124 Ind. 329, 24 N.E. 886 (1890)).
>
> Here, the Access Road Easement, by its terms, is not exclusive. The Drenter Deed does not expressly state that the Access Road Easement may be used exclusively by the owner of the Drenter Parcel.  We cannot say that the reference to "a private road and right-of-way," over the easement area, without more, amounts to clear evidence of an intent to exclude the servient estate holders and others authorized by the servient estate holders or that the easement

---

[6] The private road also abutted and extended partially over other parcels.  215 N.E.3d at 1111.

was intended to benefit only the Drenter Parcel and not the other properties which abut the easement area. *See Bratton*, 588 N.E.2d at 554 (holding the grant of a "right of way and easement appurtenant, for use as a roadway and driveway," which provided the appellants' parcels with access to a county road and extended over the property of the appellees as the servient estate holders, did not contain clear evidence of an intent to exclude the servient estate holders and rejecting the appellants' argument that they had the exclusive right to the use of the easement).[7]

---

[7] A footnote here in *Crowe* stated:

> *See also* RESTATEMENT (THIRD) OF PROPERTY, SERVITUDES § 1.2, com. c (2000) ("The term 'exclusive' used in the context of servitudes means the right to exclude others. The degree of exclusivity of the rights conferred by an easement . . . is highly variable . . . . At one extreme, the holder of the easement . . . has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. For example the holder of a private roadway easement in a public road has no right to exclude anyone from using the road. At the other extreme, the holder of the easement . . . has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries. In between are easements where the servitude holder can exclude anyone except the servient owner and others authorized by the servient owner (usually called 'nonexclusive easements') and easements where the servitude holder can exclude the servient owner from use of facilities constructed for enjoyment of the easement . . . , but cannot exclude the servient owner from making other uses that do not unreasonably interfere with uses authorized by the servitude (usually called 'exclusive easements'). *Typically, roadway easements are 'nonexclusive' in that the servient owner has the right to use the road* and the right to grant additional easements or licenses for use of the road.") (emphasis added); *id.* at § 4.9, com. d ("Roads and driveways are often intended to be shared by dominant and servient owners."); THE LAW OF EASEMENTS & LICENSES IN LAND § 1:28 (2023) ("Although a grantor may agree not to enter, occupy, or use the area over which the easement runs, such arrangements are looked upon with disfavor because they severely reduce the grantor's ability to enjoy the fee owner's traditional right of possession. Thus, the term 'exclusive' or 'exclusively' is frequently not considered to exclude the grantor, and the transfer is found to create an easement in the grantee, with the grantor retaining the right to use the easement area as long as the grantor does not interfere with the easement holder's rights."), § 1:28 n.6 ("*See . . . Titeca v. State By and Through Dept. of Fish, Wildlife, and Parks*, 194 Mont. 209, 213, 634 P.2d 1156, 1159 (1981) (exclusive easement is not created by use of phrase 'private road'); *Lindhorst v. Wright*, 1980 Ok. Civ. App. 42, 616 P.2d 450, 454 (Ct. App. Div. 1 1980) (right of ingress and egress not exclusive, so owner of servient tenement could make reasonable use of property). *Cf. Triangle Iron Works, Inc. v. Franchise Realty Interstate Corp.*, 524 So. 2d 1145, 1145-1146 (Fla. Dist. Ct. App. 2d Dist. 1988) (easement language excluded third parties, but did not create exclusive easement as between grantor and grantee)."); *id.* at § 8:20 (2023) ("Absent an express provision in a grant or a reservation, an easement is not an exclusive interest in the burdened land."); *id.* at § 9:1 ("A person, such as a grantee or a lessee, who

*Id.* at 1116-1118 (citation to record omitted).

[12]    Here, the language of the First Addition Plat by its terms is unambiguous. The First Addition Plat expressly provides, "Unplatted ground South of these lots on the lake *is for the exclusive use of lot owners of this plat*, to be used as a boat landing." Exhibits Volume III at 7 (emphasis added). We conclude that the reference to "the exclusive use of lot owners of this plat" with respect to the Easement Area constitutes an affirmative restriction and clear evidence of an intent to exclude the servient estate holders and that the exclusive use restriction or easement was intended to benefit only the owners of lots in the First Addition Plat.[8] *See* THE LAW OF EASEMENTS & LICENSES IN LAND § 1:28 n.10 (2023) (citing *Gray v. McCormick*, 167 Cal. App. 4th 1019, 1021-1033, 84 Cal. Rptr. 3d 777, 779-788 (4th Dist. 2008) ("[T]he language of the instrument by which the easement was created . . . clearly expresses an intention that the use of the easement area be exclusive to the owners of Lot 6 [the dominant estate], at least as to the surface thereof."); *Alexander Dawson, Inc. v. Fling*, 155 Colo. 599, 604, 396 P.2d 599, 601-602 (1964) (right to "sole and exclusive use of

succeeds to the possession of the dominant estate is entitled to enjoy any easement appurtenant to that property.").

*Crowe*, 215 N.E.3d at 1118 n.5.

[8] The lot owners' contributions toward maintenance of the piers is consistent with this interpretation. The court found that the lot owners in the First Addition Plat share in the maintenance and costs of installation and removal of piers within the Easement Area, that the lot owners in the Second Addition Plat have five piers which are utilized by them, and that the lot owners of the First Addition Plat do not contribute to any expenses related to the Second Addition Plat piers.

Audubon Lake . . . for boating and swimming purposes" recognized, but not expanded to include fishing profit)).

[13] Miller agrees that a portion of Lot 11 "lies within the boundaries of" the Easement Area. Appellant's Brief at 20. The trial court found that the portion of Lot 11 located within the Easement Area "is subject to the exclusive rights of the lot owners" in the First Addition Plat. Appellant's Appendix Volume II at 25. We agree. The First Addition Plat containing the "exclusive use" language benefiting the owners of the lots in the First Addition Plat was recorded in 1928 in the Office of the Recorder of Kosciusko County. The Second Addition Plat depicting Lot 11 was recorded in 1940. Also, the warranty deed pursuant to which Miller obtained title to a portion of Lot 11 stated the conveyance was "[s]ubject to all easements, covenants, conditions, and restrictions of record." Exhibits Volume III at 42. Lynn Erickson, a title examiner, testified that any conveyance of the portion of Lot 11 located within the Easement Area is subject to the easement benefitting the owners of the lots of the First Addition Plat. The Second Addition Plat did not modify the exclusive use restriction or easement of record as set forth in the First Addition Plat, and that portion of Lot 11 which is located within the boundaries of the Easement Area is subject to the exclusive use restriction. *See Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 988 (Ind. 2018) (observing that, while deed did not refer to easement running through lot, the subdivision plat in the public records to which the lot was subject did show the easement).

[14] As for the 1944 Deed, pursuant to which Charles as the grantor conveyed Lot 13 in the Second Addition Plat to R.B. and Mae Correll as the grantees, the instrument also purported to grant "the right to the common use of the public boat landing adjacent to" the First Addition Plat. Exhibits Volume III at 16. However, Charles could not convey an interest which he did not possess, and the exclusive use restriction in the First Addition Plat did not benefit the owners of Lot 13 or the other lots in the Second Addition Plat. Moreover, Charles was unable to unilaterally modify the exclusive use restriction or easement granted in the First Addition Plat. *See Town of Ellettsville*, 111 N.E.3d at 991 (addressing easement established in plat and noting, "[i]f any lot, or part of a lot, located in such plat shall have been sold and conveyed, no modification thereof can be made unless the owners of all the lots and parts therein join in the execution of such writing") (citing *Wischmeyer v. Finch*, 231 Ind. 282, 288, 107 N.E.2d 661, 664 (1952)); Ind. Code § 36-7-3-10 ("In a case in which all the owners of land in a plat are in agreement regarding a proposed vacation, the owners may file a written instrument to vacate all or part of that plat.").[9] The 1944 Deed did not modify the exclusive use restriction in the First Addition Plat.

[15] With respect to use of the Easement Area, the trial court concluded in Paragraph 42 of its order:

---

[9] Miller concedes "[i]t is undisputed that the lots within [the First Addition Plat] were sold prior to [Phillip's] death and the subsequent conveyance of Lot 13 by [Charles]." Appellant's Brief at 29.

The plain meaning of a boat landing area connotes a right of entry to the lot owners of [the First Addition Plat] to the specified area for the purpose of lake access, mooring boats, loading and unloading personal watercraft, placement of piers, communal area for First Addition [Plat] residents to gather while accessing the boat landing area, and general enjoyment of the boat landing area.

Appellant's Appendix Volume II at 24.

[16] The owner of an easement possesses all rights necessarily incident to the enjoyment of the easement. *Kwolek*, 944 N.E.2d at 571. The court found that Plaintiffs and their predecessors have used the Easement Area "as a community common area for a boat landing area, the placement of piers, ingress and egress access to the lake, loading and unloading of boats, storage of piers, gatherings, and the general enjoyment of the common area." Appellant's Appendix Volume II at 19. Given the language in the First Addition Plat that the Easement Area is "to be used as a boat landing," Exhibits Volume III at 7, and the findings, we cannot say that the court's order in Paragraph 42 is clearly erroneous, and we are not left with a definite and firm conviction that a mistake has been made.[10]

---

[10] To the extent Miller asserts that a prescriptive easement to use the "boat landing area" benefits Lot 13 based on his and his predecessor's use of the area, Appellant's Brief at 33, the record shows that Miller requested summary judgment on this basis and the court denied the request and found there were issues of material fact. At trial, Miller's counsel did not ask the court to find a prescriptive easement based on the evidence presented at trial. Miller filed proposed findings of fact and conclusions of law, which were not included in the appellant's appendices, stating "as [he] and his predecessors in title satisfied all elements of a prescriptive easement, [he], by virtue of his ownership of Lot 13, has a prescriptive easement to utilize the boat landing." Miller's Proposed Findings and Conclusions at 22, Filed July 15, 2024. In particular, he proposed that the court find that "he would often sit in the 'boat landing' area and drink coffee, and he would walk through and onto the boat landing to fish off of the piers and access his boats," that Steven and Kelly Read used the area to enter the lake to swim, that he "installed his own pier off of the 'boat landing,'" and

[17]     For the foregoing reasons, we affirm the judgment of the trial court.

[18]     Affirmed.


Altice, C.J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT

Tyler J. Rotstein
Douglas E. Johnston
Tourkow, Crell, Rosenblatt & Johnston, LLP
Fort Wayne, Indiana


ATTORNEY FOR APPELLEES

Stephen R. Snyder
Snyder Morgan & Kuchmay LLP
Syracuse, Indiana

---

that his actions and Kelly Read's actions "spanned from June 2001 until July 2022." *Id*. at 20-22. The trial court did not adopt any of Miller's proposed findings regarding a prescriptive easement. Even if Miller did not waive his argument by failing to present it during the bench trial, we would not conclude that the court's judgment was clearly erroneous. We note that, in his appellant's brief, Miller does not point to testimony that Steven and Kelly Read used the area to enter the lake to swim, but he argues that the Reads "used the area between [Lot 11] and water's edge to access the water" and refers to page 80 of the transcript. Appellant's Brief at 34. Page 80 of the transcript reveals a brief portion of Kelly Read's testimony. When asked, "you're talking about the land that is directly south of [] the triangular portion of Lot 11 is what you would use to access the water correct," Kelly Read replied "Correct," and when asked "did you use that area south of the triangle the entire time that you owned the property," she answered "Yes." Transcript Volume II at 80. We do not reweigh the evidence presented at trial and consider only the evidence favorable to the trial court's judgment. *See Newforth*, 120 N.E.3d at 599. The trial court was able to observe the testimony of Miller and Kelly Read regarding their use of the Easement Area over the years, discount the testimony which it did not find convincing, and decline to adopt Miller's proposed finding that the evidence demonstrated a prescriptive easement. Our review of the record does not leave us with a definite and firm conviction that a mistake has been made.